**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADAMS POINTE I, L.P, ADAMS POINTE II, L.P., BAYBERRY NORTH ASSOCIATES L.P., AND BETTERS REAL ESTATE HOLDINGS, L.P., INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED | § § § § § § | |
| | § | Civil Action No.: _____ |
| Plaintiffs, | § § § | **JURY TRIAL DEMANDED** |
| vs. | § § | |
| TRU-FLEX METAL HOSE CORP., TRU-FLEX, LLC, and PRO-FLEX LLC. | § | |
| Defendants. | | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND CLASS ACTION

COME NOW, Plaintiffs ADAMS POINTE I, L.P., ADAMS POINTE II, L.P., BAYBERRY NORTH ASSOCIATES, L.P., and BETTERS REAL ESTATE HOLDINGS, L.P., Individually, and as proposed class representatives on behalf of all similarly situated persons, and submit the following Complaint against Defendants Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC (collectively referred to as "Defendants").

## INTRODUCTION AND NATURE OF CASE

1.     Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC[1] sell a flexible gas piping system throughout the United States, including Pennsylvania, known

---

[1]     Although the named Defendants have undergone corporate structure changes whereby the Pro-flex CSST product was transformed from solely a branded product under the auspices of Tru-Flex Metal Hose Corp. and Tru-Flex, LLC into a corporate entity (Pro-Flex, LLC) under the control of Tru-Flex Metal Hose Corp. and Tru-Flex, LLC, all three iterations of the culpable parties are implicated in this class action for the time periods alleged.

as Corrugated Stainless Steel Tubing ("CSST") for use in residences and in other structures. CSST consists of continuous, 300-series flexible stainless-steel pipe encased in an insulative outer (yellow) jacket.  The yellow jacket materials has the thickness of approximately four sheets of paper.

2.     CSST is marketed as a superior option for natural gas delivery, and manufacturers, including Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC, claim same to be more installer-friendly and safer than traditional black iron pipe gas delivery systems that have been used by plumbers across the United States for more than 100 years. www.proflexcsst.com.

3.     Almost two decades ago, manufacturers began to realize that yellow-jacketed CSST products are prone to catastrophic failure when exposed to electrical energy. Despite such internal industry recognition, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC continued the manufacture, marketing, and distribution of their yellow-jacket CSST product – Pro-Flex® CSST -  knowing full-well that the yellow jacket material encased around the metal tubing is highly susceptible to disintegration.

4.     According to materials published on a cooperative "Safety" website maintained by manufacturers of yellow CSST, in the United States, about 500,000 new homes per year have CSST installed.  www.csstsafety.com/CSST-FAQs.  It is estimated by CSST manufacturers that approximately one billion feet of this piping has been installed in residential, commercial, and industrial structures. www.csstsafety.com/CSST-FAQs.

5.     Although heavily marketed as a safe alternative to black iron pipe, yellow CSST is susceptible to failure in several ways: (1) when exposed to electric arcing from

household appliances with moderate voltage; (2) when subject to an indirect lightning strike; and (3) when exposed to a direct lightning strike. Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC are aware of the dangers, and have intentionally opted to do nothing more than propose an ineffective partial mitigation—bonding and grounding.

6.      A class-action lawsuit, *Lovelis, et al. v. Titeflex, et al.*, Case No. Civ-2004-211 (Arkansas Circuit Court, Clark County) was filed against certain manufacturers of yellow-jacket CSST.[2] The class action arose from the design, manufacture, marketing, sales, and distribution of yellow-jacket CSST, which possessed insufficient thickness to protect against combustion, and further for the failure to warn consumers about the dangers of the product. In 2007, the original class action defendants resolved the claims brought against them and made representations that a safety "fix" in the form of bonding and grounding could "mitigate" both the risk and subsequent harm.[3]

7.      Although not defendants in the *Loveless* class action, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC joined the subsequent concerted effort to convince lawmakers, regulatory bodies, and consumers that the proposed "safety fix" of bonding and grounding rendered the yellow-jacket CSST products "safe."  The Defendants changed the installation manuals provided to installers of Pro-Flex® CSST and

---

[2]      The original class action named manufacturers possessing the largest market share of the relevant venue at the time of the suit – Titeflex Corporation, Ward Manufacturing, Inc., OmegaFlex, Inc., and Parker-Hannifin Corporation – and focused upon the predominant manufacturers in the subject jurisdiction.  None of the Defendants named in this Complaint were parties to the original class action.

[3]      Under the Settlement Agreement, the original class action defendants agreed to pay the value of issued payment vouchers redeemed by a class member for the installation of a lightning protection system or bonding and grounding of the company's CSST product.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                 **Page 3**

affirmatively promoted the effectiveness of the "fix" to their dangerous product, continuing the manufacture, marketing, and sales of Pro-Flex® CSST.  However, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC failed to first validate whether bonding and grounding actually works.

8.     Bonding and grounding is an illusory "safety" measure for new installations, and does not remedy what the industry calls "legacy installations" of Pro-Flex® CSST. Without confirmation of the validity of other manufacturer's representations that the inherent defects in the yellow-jacket CSST could be "fixed" or even mitigated through bonding and grounding, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC continued the manufacture, marketing, and sales of Pro-Flex® CSST.

9.     Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC possess actual knowledge that yellow-jacket Pro-Flex® CSST is placed into the stream of commerce without sufficient thickness to protect against combustion after a lightning strike or potentially even household current. Despite such knowledge, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC continue to manufacture and distribute same to "do-it-yourselfers" and professional installers alike in the Commonwealth of Pennsylvania and nationwide.

10.     The Pro-Flex® CSST product is installed in real property owned by the named Plaintiffs.  Such product has been the cause of property-damaging fires, loss of value to the structures, costs for the illusory "fix" of bonding and grounding, retrofitting costs, sales losses, and increased risk coverage costs.  Plaintiffs, on behalf of themselves and those similarly situated, seek redress for the harm caused by Defendants in the design,

manufacture, and ongoing marketing and sales of a product they know to be defective.

## PARTIES

11.    ADAMS POINTE I, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. The Pointe at Adams Ridge - subdivision I, a residential condominium subdivision, is located in Mars, Butler County, Pennsylvania.

12.    ADAMS POINTE II, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. The Pointe at Adams Ridge – subdivision II, a residential condominium subdivision, is located in Mars, Butler County, Pennsylvania.

13.    BAYBERRY NORTH ASSOCIATES, LP is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. Clearwater Estates, a residential condominium development, is located in Franklin Township, Pennsylvania. Certain completed units in Clearwater Estates were purchased by Bayberry North Associates, LP along with ongoing property construction interests.

14.    BETTERS REAL ESTATE HOLDINGS, LLC is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at

100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001.

15.    Defendants TRU-FLEX, LLC and TRU-FLEX METAL HOSE CORP. ("Tru-Flex") are Indiana corporations with a shared principal place of business at 2391 South State Road 263, West Lebanon, IN. Both entities have done business in Pennsylvania, and have not appointed a registered agent for service in the Commonwealth of Pennsylvania. Accordingly, service may be made by serving C.T. Corporation System, 1515 Market Street, Suite 1210, Philadelphia, Pennsylvania 19102.

16.    Defendant PRO-FLEX, LLC ("Pro-Flex") is an Indiana corporation with a principal place of business at 501 South State Road 341, Hillsboro, IN. Pro-Flex conducts business in the Commonwealth of Pennsylvania, and has not appointed a registered agent for service in the Commonwealth of Pennsylvania. Accordingly, service may be made by serving C.T. Corporation System, 1515 Market Street, Suite 1210, Philadelphia, Pennsylvania 19102.

## JURISDICTION AND VENUE

17.    This is a Class Action lawsuit seeking monetary damages pursuant to Federal Rule of Civil Procedure 23.

18.    This Court has personal jurisdiction over Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC by virtue of the extensive amount of business these corporations regularly conduct within the Commonwealth of Pennsylvania and, further, because of the specific conduct at issue relating to Plaintiffs and the Class. All Defendants are amenable to service under the Pennsylvania long-arm statute and the exercise of

jurisdiction does not offend traditional notions of fair play and substantial justice.

19.     Plaintiffs are citizens of the Commonwealth of Pennsylvania. Defendants sold and continue to sell the Pro-Flex® CSST yellow-jacket product in the Commonwealth of Pennsylvania.  Furthermore, real property and residences owned by Plaintiffs in which the Defendants' Pro-Flex® CSST product is installed are located here in the Commonwealth of Pennsylvania.

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000. Jurisdiction is further conferred upon this Court pursuant to the Class Action Fairness Act in that damages exceed more than $5,000,000 in the aggregate, and the parties are citizens of different states. 28 U.S.C. § 1332(d)(2).

21.     This Court has personal jurisdiction because the Defendants' contacts with the forum are continuous and substantial and because the claims of Plaintiffs and the Class arise out of Defendants' contact with the forum.

22.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants engage in continuous and systematic activities within the Commonwealth of Pennsylvania. Specifically, as provided by 28 U.S.C. §1391(c), all of the named Defendants herein are companies that are deemed to reside in this District. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL BACKGROUND

*The Liable Parties*.

23.     Tru-Flex Metal Hose Corp., Tru-Flex, LLC, and Pro-Flex, LLC ("the Defendants") jointly design, manufacture, market, distribute and sell corrugated stainless steel tubing in the Commonwealth of Pennsylvania and throughout the United States. The marketing and distribution chain includes independent distributors, large "box store" retailers, and online sales in the Commonwealth.

24.     Tru-Flex LLC publically advertises itself as a designer and manufacturer of flexible metal hoses, declaring itself a "proven industry leader" in same. www.tru-flex.com/our-story. Tru-Flex Metal Hose, LLC is a subsidiary of Tru-Flex LLC, or alternatively is the alter ego or agent of Tru-Flex, LLC for purposes of the design, manufacture, marketing, and distribution of flexible piping, including yellow-jacketed CSST for use as a natural gas distribution system in residences and other structures, and provides brand name Pro-Flex® CSST flexible gas piping products.  Defendants Tru-Flex, LLC and Tru-Flex Metal Hose, LLC are herein collectively referred to as "Tru-Flex."

25.     Tru-Flex has previously, and continues to, market and distribute tubing and related products for natural gas transmission within residential housing under the brand name "Pro-Flex®".  Pro-Flex, LLC is a corporate entity under the direction and control of Tru-Flex, and is currently charged with the ongoing manufacturing, marketing, and

distribution of the Pro-Flex® yellow-jacket CSST brand.

26.     At all times relevant to this action, the Defendants jointly and collectively designed, manufactured, marketed, sold, and distributed the "Pro-Flex® brand of yellow-jacketed CSST, or otherwise placed same into the stream of commerce, which ultimately was installed in Plaintiffs' buildings and condominiums, as well as in millions of homes and buildings across America.  These acts were taken with full knowledge of the dangerous inadequacies of yellow-jacketed CSST.

**Yellow-Jacketed CSST – Dangerous and Defective.**

27.     It is currently estimated that more than 800 million feet of CSST is installed in homes and other residential structures such as condominiums across the country. www.csstsafety.com/CSST-history. Such installation continues to occur despite industry findings that yellow CSST "fails in the presence of lightning." SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas Piping to Mitigate Lightning Related Damage*, The Fire Protection Research Foundation (April 2011), available at www.nfpa.org/assets/files/PDF/Research/CSST.

28.     Yellow-jacket CSST is uniquely susceptible to degradation and failure when exposed to electrical insult. *See* Mark Goodson and Mark Hergenrether, "*Lightning Induced CSST Fires*" (August 2011), available at www.goodsonengineering.com/wp-content/uploads/2011/08.   The heat of the electrical event penetrates the thin walls of the CSST, even though the electrical arcs last only a fraction of a second. When the piping

melts, the gas inside escapes and causes a gas-fueled fire.

29.    As admitted by the *proponent manufacturers:* "Lightning is a highly destructive force.  Even a nearby lightning strike that does not strike a structure directly can cause systems in the structure to become electrically energized.  This power surge can potentially puncture a hole in CSST and cause a fire." www.csstsafety.com/CSST-FAQs. Electrical energy will travel through any conductive path, such as gas piping, until it is able to reach the ground. Traditional black iron pipes are able to withstand this energy.

30.    It has been estimated that the wall thickness of CSST measures approximately .011 inches. The wall thickness, or lack thereof, of the Pro-Flex® CSST is too thin to withstand the electrical energy produced by lightning strikes or even certain household currents unlike its traditional counter-part of black iron pipe.

31.    If a direct or indirect lightning strike energizes CSST, the insulative material and encased piping will not be able to carry the charge, which will look to jump to a less resistant pathway, such as a nearby metal pipe or ventilation duct. Indeed, the minimum amount of energy emitted required to generate the "arc" is the same as one would find in ordinary household electric current and can emanate from ordinary household appliances.

32.    Not only does yellow CSST not stop the arcing, it actually helps cause it.  As experts have noted, the yellow CSST actually has no conductive value, meaning it does not distribute the electric charge.  Instead, it serves to focus the energy from an arc into the weakest points of the yellow-jacketing, disintegrating those points first and exposing the

metal tubing to further energy, causing holes or perforations in the gas lines.

*Industry Knowledge.*

33.    The CSST industry is aware that inevitably, after installation, CSST is exposed to electric current.  It is frequently exposed during electrical storms and lightning strikes.  But even more frequently, it is exposed in ordinary household circumstances where nearby sources of electricity – electric wiring or appliances – cause a "flashover" or an electric "arc."

34.    The industry has acknowledged that the mechanism of degradation of the tubing is any electrical energy source sufficient to cause an "arc" between the CSST and any nearby conductive material – *e.g*., metal wiring, metal fasteners, metal bolts, etc. – which concentrates at a point to puncture or melt a hole in the tubing.

35.    The dangerous propensities of yellow-jacket CSST has been litigated in other venues and contexts, including personal injury and wrongful death lawsuits associated with indirect lightning strikes.  As noted *supra*, a product liability class action was pursued as to different manufacturers, and did not include Tru-Flex or Pro-Flex.

36.    Despite the representations in the industry regarding *potential mitigation* in the single circumstance of indirect lightning strikes, the use of yellow-jacket CSST remains suspect and is challenged in moratoriums and outright bans in municipal contexts, and its inclusion in structures is subject to disclosure requirements for sales and deed transfers as a part of requisite safety disclosures.

_Alleged Mitigation Through An Ineffective "Fix."_

37.     Competitors of Tru-Flex and Pro-Flex (Titeflex Corporation, Ward Manufacturing, Inc., OmegaFlex, Inc., and Parker-Hannifin Corporation) were defendants in the class-action lawsuit _Lovelis, et al. v. Titeflex, et al._, Case No. Civ-2004-211 filed in Clark County, Arkansas Circuit Court, Arkansas. The _Lovelis_ plaintiffs charged that the prior class action defendants possessed both general and specific knowledge that yellow-jacket CSST possessed insufficient thickness to protect against combustion, and yet continued to design, manufacture, market, distribute, and sell same.  The _Lovelis_ class action further alleged that the defendants failed to warn consumers about the inherent defect of the CSST product that rendered it unreasonably dangerous when used for its designed purpose.

38.     Although generally denying the underlying allegations, the prior class action defendants entered into a Settlement Agreement that included, in part, actions to "mitigate" the dangerous propensities of yellow-jacket CSST. This mitigation involved the inclusion of a "bonding and grounding" fix in an effort to _reduce_, not correct or eliminate, the latent defective condition of the CSST product in situations involving one of the identified dangers - indirect lightning strikes.

39.     "Bonding" essentially attempts to connect or tie all metal points in the gas system together so that they conduct at the same electrical potential level, theoretically

preventing an "arc" between areas of different electrical potential. The National Electric Code ("NEC") defines *bonding* as, "The permanent joining of metallic parts to form an electrically conductive path that ensures electrical continuity and the capacity to conduct safely any current likely to be imposed."

40.     "Grounding" essentially attempts to provide stray electrical current with a path to the earth (ground).  The NEC defines *grounding* as, "Establishing a connection, whether intentional or accidental, between an electrical circuit or equipment and the earth or to some conducting body that serves in place of the earth." This is accomplished by attaching a larger wire (a ground wire or other ground mechanism) to the tubing to "remove" the electrical charge.  The charge transfers to the ground wire or other "ground" to direct the electric charge away from the tubing.

41.     The bonding and grounding guidelines suggested by the original class action defendants were included in industry-wide revised Design and Installation Manuals provided to certified installers (not the ultimate homeowner) for purposes of new installations of those defendant manufacturers' yellow-jacket product. During this same time period, manufacturers not involved in the original class action united in an industry-wide admission of the dangerous conditions caused by yellow-jacket CSST, and the need for revision of installation manuals and information dissemination.

42.     Tru-Flex and Pro-Flex joined the proponents of the bonding and grounding "fix."  www.proflexcsst.com/docs/Electrical%20Bonding.pdf.   But Defendants joined this

presumptive informational bandwagon without verifying the disseminated message.

43.     Industry regulators almost immediately questioned the purported safety "fix," noting the absence of sufficient validation of the representations of bonding and grounding as a safety solution.   In August, 2009, the National Association of Fire Protection ("NFPA") Standards Council considered a Tentative Interim Amendment ("TIA") to the 2008 edition of NFPA 70, the National Electric Code ("NEC"), to establish certain specific requirements as it concerns the bonding of CSST.   The Council subsequently formed a CSST Task Group, charging it with the responsibility of providing the Council with a "review and analysis of the technical issues relating to lightning and CSST gas systems."

44.     In March 2010, the CSST Task Group concluded its review and reported to the Standards Council that it had requested information on the research allegedly supporting the CSST bonding requirements of NFPA 54 (the National Fuel Gas Code) from the manufacturers, and the information received from the CSST manufacturers in response was "of limited value" and "did not provide enough information for the CSST Task Group to ascertain that the proposed bonding remedy will provide adequate protection from lightning induced surges." Noting the utter lack of technical substantiation from the CSST manufacturers, the CSST Task Group concluded that a research program was necessary to "identify safe methods for the installation of CSST to protect against lightning and induced failures with consequent gas leakage."

45.     The Task Group identified the following areas that should be addressed: (1) validate whether or not bonding of CSST is an adequate solution; (2) if bonding is the solution, validate how bonding should be done; (3) if bonding is the solution, validate the size of the bonding jumper(s); (4) determine locations where bonding should be done; (5) determine if alternate methods can be used to make CSST safe.  As of 2010, there remained insufficient testing and validation to confirm representations that the defective condition of CSST was remedied, or even reduced, by bonding and grounding.   And yet the sale of Pro-Flex® CSST continued.

46.     In addressing the questions raised by the CSST Task Force, the Fire Protection Research Foundation issued a "Phase I" report regarding initial efforts to validate the bonding and grounding "mitigation fix" proposed by the manufacturers for indirect lightning-related damage.  *See* SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas Piping to Mitigate Lightning Related Damage*, The Fire Protection   Research   Foundation   (April   2011),   available at   www.nfpa.org/assets/files/PDF/Research/CSST.  Ultimately,  the  SEFTIM  report concluded that additional information was needed, and further tests conducted, before reaching a conclusion validating the

47.     Despite the concerns voiced by regulators during this time period regarding the lack of validation, members of the industry continued to market and sell the yellow

CSST, including Tru-Flex and Pro-Flex.  In light of the Task Group's report, the Standards Council cautioned CSST manufacturers regarding the ongoing representation of a safety "fix" absent substantiation, and commented that "the industry or others advocating the continued use of CSST in gas piping systems shall validate the safe use of the product through independent third-party validated research and testing that can be reviewed and evaluated by standards developed in a timely way."

48.     Although representations of a safety mitigation in the form of bonding and grounding arose during the time period of the original class action, and the Standards Council's Task Force began questioning such representations almost immediately, CSST manufacturers did not perform any validation testing of the bonding and grounding "fix" until 2013, _five years_ after launching a campaign to disguise the known dangers of the yellow-jacket CSST product, as reflected in the May 3, 2013 Report from the Gas Technologies Institute ("GTI").

49.     The methodologies and conclusions asserted in the 2013 GTI Report have been criticized as incomplete, deceptive, and the result of collusion between certain CSST manufacturers, GTI, and other third-party contributors.  Although the targeted safety campaign regarding bonding and grounding insinuated a "mitigation" of the inherent danger of CSST on the whole, the testing actually performed _excluded_ all conditions but-for indirect lightning strikes.

50.     Furthermore, on October 12, 2015, GTI provided notice to the NFPA

Standards Council of revised information "prepared by Gas Technology Institute ("GTI")
for the CSST Project Sponsors" in the form of a "2015 Revised Draft Final Report." The
proposed revised report acknowledges the alteration of certain data represented in the
original 2013 GTI report. Despite the inadequacies of the testing, the illusory nature of the
"fix", and the known defective condition of the insulative coating, Pro-Flex® CSST
continues to be manufactured, marketed, and sold.

***Pro-Flex® CSST – Ongoing Harm.***

51.     Tru-Flex and Pro-Flex promote the sale of its patented yellow-jacket CSST
system, Pro-Flex® CSST. These Defendants joined the "bonding and grounding" campaign
without adequate validation testing, and continue to not only manufacture, market and
distribute Pro-Flex® CSST, but further affirmatively act to mislead consumers regarding
the dangers of this product.

52.     Pro-Flex® CSST is specifically marketed by both Tru-Flex and Pro-Flex as
easier to install than black iron piping, promoting an elimination of the equipment needed
to install gas piping in new or existing construction.  Pro-Flex® CSST is additionally
marketed as a safe alternative to traditional black iron piping for the distribution of natural
gas in residences.

53.     These acts are ongoing despite Defendants' knowledge that Pro-Flex® CSST
is not able to withstand the types of electrical charge discussed above due to its corrugated
design and thin walls. Indeed, in marketing materials related to Pro-Flex® CSST, Tru-Flex

and Pro-Flex acknowledge that "electrical arcing is the single most dangerous threat to safety in a lightning scenario." These Defendants explicitly noted in bulletins provided to certified installers that "[a]rcing can cause damage to CSST." http://www.proflexcsst.com/docs/Electrical%20Bonding.pdf. Tru-Flex and Pro-Flex further disseminate bulletins directed to certified installers that admit "electrical arcing is the single most dangerous threat to safety in a lightning scenario." http://www.structuretech1.com/wp-content/uploads/2015/04/Ship-in-the-fog-flyer.pdf. Indeed, these Defendants go on to challenge the "black jacket" alternative design of other manufacturers and assert "'arc-resistant'" CSST does not eliminate the chances of an arcing event." *See id.*

54.      Tru-Flex and Pro-Flex ignore the risk to Pro-Flex® CSST systems from household electric current or direct lightning strikes altogether, and join the misleading campaign asserting a "mitigation" of risks associated with indirect lightning strikes. Their representations that bonding and grounding "fixes" the harm imposed on the structures by the installation of Pro-Flex® CSST itself is an ongoing affirmative harm.

55.      Tru-Flex and Pro-Flex modified installation guides to include the "bonding and grounding" instruction for new installations, but did not provide remedies or relief for legacy installations. Additionally, unlike other manufacturers, Tru-Flex and Pro-Flex opted not to modify the design of its CSST product, continuing with the use of the insulative yellow jacket and relying solely on the instruction for future installations to include bonding and grounding.

56.      Tru-Flex and Pro-Flex continued to manufacture, market, and distribute

yellow jacket Pro-Flex® CSST despite the industry's acceptance of safer alternative designs (for example, black jacket CSST), relying instead on the possibility of a *mitigation* of *some of the risk* despite possessing the knowledge that industry oversight committees questioned whether the proposed bonding requirements for CSST had been adequately substantiated.

57.     The "bonding and grounding" recommendation to future installers of the Pro-Flex® CSST product actually compounds the harm by falsely asserting bonding and grounding is sufficient to remedy the inherent dangerous propensities of yellow-jacketed CSST. Not only does this "fix" as announced for new installations do nothing for legacy installations of Pro-Flex® CSST, it conveniently misses a critical point - the yellow jacketing material placed on the Pro-Flex® CSST actually *focuses* the electrical energy onto the surface of the CSST, which makes bonding and grounding an impotent solution.

58.     Despite claims from Tru-Flex and Pro-Flex that Pro-Flex® CSST is safe(r) when properly bonded, even if all mechanical and electrical systems of the property are properly bonded, yellow Pro-Flex® CSST still poses a risk of a lightning-related fire and risks from even ordinary household current.

**The Adams Pointe and Clearwater Estates Properties**.

59.     Plaintiffs possess, promote, and provide residences believed to be constructed with safe products in a safe community environment. Specifically, the Plaintiffs own and manage multiple condominiums, quad duplexes, carriage homes, and townhomes in Adams Township, Pennsylvania (Adams Pointe) and Franklin Township,

Pennsylvania (Clearwater Estates).

60.     In 2011, a fire occurred at Adams Pointe Boulevard, Mars, PA following an indirect lightning strike.   Post-incident inspection revealed the yellow-jacket Pro-Flex® CSST released natural gas after the indirect lightning strike, with the resultant fire damaging contents, fixtures, and separate portions of the condominium structure.

61.     On June 14, 2015, another fire occurred at 220 Adams Pointe Boulevard, Mars, PA after lightning activity resulted in an indirect lightning strike nearby.  After a fire investigation by third parties, it was determined that the Pro-Flex® CSST installed in the condominium unit failed as a result of electrical insult, releasing natural gas into the unit, which was ignited and caused significant property damage not only to the contents and structure of the apartment unit with the insulted CSST, but to neighboring condominium units as well.

62.     Plaintiffs incurred additional losses beyond the property damage to contents, appliances, and structures – Plaintiffs also incurred costs in third-party expert investigation, repair and replacement of the natural gas piping system, replacement and repair of items damaged in the fire, and additional structural repairs.

63.     Plaintiffs have experienced actual harm and realized damages from the installation of the Pro-Flex® CSST. Both Adams Pointe and Clearwater Estates are currently realizing damages in the form of diminution in value and the effect of seller disclosures of yellow-jacket CSST on sales and seller-associated costs. Therefore, in

addition to the damages for repair and remediation incurred by the structural fires, Plaintiffs experience ongoing and actual damages to the value of structures not directly damaged by fire, and the insurability of same.

64.     In addition to the diminution of the value of property and effect to risk premiums, all Plaintiffs and the Class Members are damaged in the incurrence of costs of inspection and remediation, and losses incurred in reliance on the inaccurate and intentionally misleading bonding and grounding "fix."  Pennsylvania home inspectors are noting the presence of yellow CSST, and insisting upon additional inspection by licensed electrical contractors to ensure compliance with installation guides and relevant codes.

65.     As inspectors note the presence of yellow CSST, obligations are placed on sellers of these structures to disclose such CSST in statutorily-mandated Seller's Disclosures. Pennsylvania home sellers must, by law, advise potential buyers of the property about "known material defects" that are not readily observable, including structural and other problems, before the sale is completed. The standard form covers the home's structure, such as the roof, basement, foundation and walls. Buyers also need to know whether the plumbing, electrical, heating and air conditioning systems are in good, working order.

66.     All states, including the Commonwealth of Pennsylvania, require some form of Seller's Disclosure of hazards or environmental contaminants on the property, as well as report if there are any title, insurance, or financial issues.  All states further include

broad-form disclosure of material defects that may not be expressly listed on the statutory or industry forms, where sellers are expected to disclose anything that didn't otherwise fit the categories on the form.

67.     A material defect is a problem that cannot be corrected with simple maintenance – it is something that will require significant effort to repair.  Pro-Flex® CSST falls into such category requiring disclosure, which affects the value of the structure and impacts sales negotiations and final sales pricing.

68.     Experts in electrical and mechanical failure analysis with extensive experience in the dangers of CSST propose the following: (1) convert structures to electricity only and remove all gas delivery systems; (2) retain gas delivery systems but remove all Pro-Flex® CSST from the structures and install black iron pipe; (3) remove all Pro-Flex® CSST from the structures and install gas delivery systems that do not possess the insulative yellow jacket; or (4) incur costs to install modified gas breaker valves to trigger the shut-off of natural gas to the CSST piping system in the event of electrical insult.

## CLASS ALLEGATIONS

69.     Plaintiffs bring this cause of action individually and on behalf all other similarly situated persons, pursuant to Federal Rule of Civil Procedure 23.

70.     Plaintiffs anticipate defining this Class as any and all persons and/or entities who:

> *Own real property in the United States in which yellow-jacket Pro-Flex® CSST manufactured, designed, marketed, or*

*distributed by the named Defendants was installed.*

It is further anticipated that additional sub-class definitions and classifications may ultimately be necessary upon class certification.

71.    The following persons and/or entities are excluded from the Class:

a)    Persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court;

b)    Persons and/or entities who have settled or otherwise resolved claims against the Defendants arising out of or in connection with individual fire damages alleged to be caused by Pro-Flex® CSST, to the extent of the resolution of those claims;

c)    Any and all federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and

d)    Any currently sitting Pennsylvania state court judge and/or justice in the current style and/or any persons within the third degree of consanguinity to such judge and/or justice.

72.    In the unlikely event that the Court should determine not to certify a nationwide Class, then in the alternative, Plaintiffs seek certification of a Pennsylvania-only class.

73.    *Numerosity – Rule 23(a)(1).* Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of the Defendants.

74.    Upon information and belief regarding the installation of yellow-jacketed CSST in millions of homes, the class likely encompasses hundreds of thousands of

consumers. Plaintiffs believe that the Class identities can be readily ascertained from Tru-Flex and Pro-Flex books and records. Additionally, based on information and belief, the Class is comprised of persons disbursed across the United States, as well as in the Commonwealth of Pennsylvania. As a result, joinder of persons is impracticable.

75. The disposition of Plaintiffs' claim will provide a substantial benefit to the persons and the court system by using Rule 23 as the vehicle to adjudicate the rights of hundreds of thousands of individuals and/or entities in one cause of action. Joining and naming each Class Member as a co-plaintiff is unreasonable and impracticable. Such a requirement would only result in Defendants' retention of money which is necessary to compensate this Class.

76. *Predominance and Commonality – Rule 23(a)(2); (b)(3).* As to the Class, there are common questions of law and fact which predominate over any questions affecting individual Class Members which include, but are not limited to:

    (a)    Whether Pro-Flex® CSST is defectively designed and unreasonably dangerous;

    (b)    Whether Pro-Flex® CSST's yellow-jacket coating is conductive and prone to failure;

    (c)    Whether Defendants tested or validated the "bonding and grounding" fix on its own product - Pro-Flex® CSST;

    (d)    Whether Defendants affirmatively represent to consumers that the Pro-Flex® CSST is safe if bonded and grounded;

    (e)    Whether Defendants' participation in the "bonding and grounding" information dissemination was intentionally misleading or fraudulent;

(f)     Whether the Plaintiffs' use of Pro-Flex® CSST was foreseeable;

(g)     Whether Pro-Flex® CSST was a proximate and/or producing cause of Plaintiffs' damages;

(h)     Whether there was a safer alternative design to prevent adverse consequences, damages, and/or injury from Pro-Flex® CSST;

(i)     Whether Defendants will be in a better position with the consumer to prevent circulation of defective products;

(j)     Whether Defendants can distribute the cost of compensating for injuries and/or damages resulting from defects by charging for it in the market place;

(k)     Whether Pro-Flex® CSST was inspected and reached the user and/or consumer without substantial alteration in the condition that the product was designed, manufactured, marketed, sold, and/or distributed;

(l)     Whether Defendants failed to adequately warn consumers that Pro-Flex® CSST was defective and/or reasonably dangerous at the time it left Defendants' control;

(m)     Whether the imposition of strict liability upon Defendants serves as an incentive to properly design, manufacture, market, and/or distribute safe products;

(n)     Whether restitution is an appropriate remedy for the Plaintiffs and Class Members;

(o)     Whether remediation and removal of the Pro-Flex® CSST is the appropriate remedy to Plaintiffs and Class Members;

(p)     Whether Plaintiffs and Class Members are entitled to inspection and the installation of potential safety devices such as gas breaker valves at the cost of the Defendants;

(q)     Whether Class Members are entitled to monetary damages for Defendants' wrongful conduct;

(r)     Whether Class Members are entitled to an injunction requiring Defendants to cease and desist from selling, marketing, distributing, and/or placing into the stream of commerce Pro-Flex® CSST;

(s)     Whether Defendants shall be enjoined from selling, marketing, and/or distributing their products without safety modifications to dwellings where Pro-Flex® CSST is already installed; and

(t)     Whether Defendants are required to pay reasonable and necessary attorney's fees and costs associated with prosecuting this lawsuit.

77.     Furthermore, there are common questions of law and fact that are based in the same core evidence for all members of the Class such as: (1) the timeline of available knowledge to Tru-Flex and Pro-Flex regarding the dangers of yellow jacket CSST; (2) the scope of the sale and installation of Pro-Flex® CSST; (3) the defect in Pro-Flex® CSST; (4) the scope of the named Defendants' participation in the campaign of "safety" in bonding and grounding; (5) Tru-Flex and Pro-Flex's testing and validation of the bonding and grounding "fix"; (6) the effect of bonding and grounding; (7) the availability of safer designs; and (8) the causal link between the deceptive, intentional and/or reckless acts of the Defendants and the damages.

78.     *Typicality – Rule 23(a)(3)*. The claims asserted by Plaintiffs are typical of the claims of the Class.  Each of the Plaintiffs and the proposed Class Members are persons or legal entities who have Pro-Flex® CSST installed in their home or building. Defendants were aware that Pro-Flex® CSST is unreasonably dangerous, and are further aware that the campaign of bonding and grounding does nothing to ameliorate such danger.  Each Plaintiff and member of the Class is therefore bringing a claim based upon the core

evidence and facts outlined *supra* regarding the sale and installation of Pro-Flex® CSST despite its known defects and the ineffective (but costly) "fix" of bonding and grounding. To the extent necessary, sub-classes can be defined within the proposed class definition.

79. _Adequacy of Representation – Rule 23(a)(4)._ Named Plaintiffs will fairly and adequately represent the claims of the Class members because Named Plaintiffs have an interest in seeing their claims through to resolution which will at the same time resolve the claims of the class-members. The Named Plaintiffs are comprised of consumers of Pro-Flex® CSST, and have suffered the categories of injury alleged in this cause.

80. Plaintiffs are represented by competent counsel who have extensive experience in class action and consumer advocacy generally, and further who have extensive and specific experience with claims regarding yellow CSST gas distribution systems, the individually named Defendants, and other CSST lawsuits. Such counsel can bear the cost of prosecuting the class action to conclusion. None of the Plaintiffs is antagonistic with the Class or has an interest in conflict with the Class.

81. _Superiority – Rule 23(b)(3)._ This Class Action is not only the appropriate method for the fair and efficient adjudication of the controversy, but is, in fact, the superior method to all other available causes of action for the following reasons:

a) The joinder of hundreds of thousands of geographically diverse individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b) There is no special interest by Class Members and individually controlling prosecution of separate causes of action;

c) Class Members' individual claims now may be relatively modest

compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual Class Members addressing their loss;

d)     When Defendants' liability has been adjudicated, claims of all Class Members can be determined by the court and administered efficiently in a manner which is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

e)     This Class Action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

f)     This Class Action will assure uniformity of decisions in litigation;

g)     Without the Class Action, Class Members will go without restitution, remediation or money damages;

h)     Without this Class Action, the restitution and/or remediation damages will be borne by the Class members and Defendants will reap the benefits of profits from defectively designed, manufactured, marketed, and/or distributed products;

i)     The resolution of this controversy through this Class Action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying adjudications of their rights;

j)     Injunctive relief will be available to protect all future consumers from the sale, marketing, and/or distribution of unreasonably dangerous products.

82.     A class action is a superior mechanism in this case to individual actions because Tru-Flex and Pro-Flex have acted in a way that is consistent as to all Plaintiffs and Class Members as to the Pro-Flex® CSST product,  and thus injunctive relief would apply to the Class as a whole.   Furthermore, a class action is a superior mechanism to individualized adjudications because prosecuting separate actions by individual class members risk creating inconsistent rulings and standards of conduct.

## FRAUDULENT CONCEALMENT - DISCOVERY RULE - AFFIRMATIVE REPRESENTATIONS

83.     Tru-Flex and Pro-Flex had a duty to disclose to Plaintiffs the internal industry knowledge of the defect of Pro-Flex® CSST, and the inaccuracies of supposed validation of any safety fix in bonding and grounding. Tru-Flex and Pro-Flex further had a duty to warn consumers such as the Plaintiffs of the susceptibility of Pro-Flex® CSST to disintegration or degradation after electrical insult.

84.     Rather than disclosing this information to Plaintiffs, Tru-Flex and Pro-Flex actively and fraudulently concealed that Pro-Flex® CSST is unreasonably dangerous, unfit for its ordinary and/or intended use, and/or is unsafe. Instead, these Defendants modified design and installation guides for new installations, representing that bonding and grounding rendered Pro-Flex® CSST safe for its intended use.

85.     These Defendants failed to test or independently validate the bonding and grounding "fix," and yet continued the manufacture, marketing, and sale of Pro-Flex® CSST.  Furthermore, Defendants participated in affirmative representations to the public regarding the unsupported safety of Pro-Flex® CSST if bonded and grounded, which constitutes an ongoing tort.

86.     Defendants' fraudulent concealment and overt misrepresentations of the safety of Pro-Flex® CSST or the existence of a "safety fix" in the form of bonding and grounding tolls the running of any applicable statute of limitations. Plaintiffs could not have, with the exercise of real caution, prudence, or diligence, discovered the defect within

the applicable statute of limitations, thus tolling same.

## MISCELLANEOUS

87.     Any conditions preceding the institution of this lawsuit have been performed, have occurred, and/or have been waived.

88.     By filing the lawsuit, Plaintiffs neither intend to, nor in fact do, waive or release any right, claim, action, cause of action, defense and/or election of remedy.

## CAUSES OF ACTION

89.     According to Tru-Flex and Pro-Flex, Pro-Flex® CSST is a superior method of piping system that can supply gas throughout a home or commercial building, and suggests routing it through walls, floor or ceiling joists, or outside to a variety of appliances.   However, Pro-Flex® CSST is a defective and dangerous product that has damaged structures owned by the Plaintiffs and Class Members.

90.     Plaintiffs and class members are experiencing realized damages as property damage and associated losses, inspection and efforts to replace, remediate, or seek other safety options, and in the reduced value of their structures since the presence of the product is specifically noted by home and building inspectors.  As a result, the value of Plaintiffs' structures are significantly diminished due to the increased safety risk of a known dangerous product. Furthermore, the increased safety risk is directly translated into immediate damages and loss in the form of increased premium payments to cover the heightened insurable risk.

91.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-10 and 23-68 of this original Complaint as if set forth herein verbatim, and

upon same assert the following causes of action and requests for relief:

## Breach of Implied Warranty of Merchantability

92.     Tru-Flex and Pro-Flex designed, manufactured, and/or marketed the product which was sold and then placed in Plaintiffs' premises and/or dwellings in the same condition as when it left Defendants' control. The Plaintiffs' use of the Pro-Flex® CSST product was foreseeable.

93.     Implied in the use of Pro-Flex® CSST by Plaintiffs and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed. When Tru-Flex and Pro-Flex sold Pro-Flex® CSST, they implicitly warranted that the products were merchantable in that they were legal, proper for its intended use, and could be safely possessed and/or sold.

94.     No reasonable consumer would knowingly purchase a product that is defective, dangerous, or improper for the designed use.  Nor would any reasonable consumer agree to the installation of a product that diminishes the value of a structure on the basis of its installation alone, and further that renders the structure one of increased insurability risk.

95.     The Tru-Flex and Pro-Flex have long been aware that household electric current emanating from inside a house can cause the same damage and destruction as a lightning strike in light of the composition of the yellow jacket surrounding Pro-Flex® CSST, and that such product is unfit for the ordinary purpose of gas distribution as intended in light of the inherent dangerous defect.  Certainly, Pro-Flex® CSST fails when directly

insulted by lightning: electricity contacts the CSST, the CSST acts as a conduit for the electrical current, the electricity perforates the pipe and permits gas to escape. Indeed, even with code-compliant and manufacturer-recommended bonding, Pro-Flex® is not immune to electrical insult.

96.     Plaintiffs and the Class Members have realized damages in the amounts paid for repair, replacement, remediation, property loss, inspection, diminution in value of structures that still contain Pro-Flex® CSST gas piping systems, and the cost effect on the insurability of such structures through loss of coverage and/or increased risk premiums.

## Strict Products Liability

97.     At all times relevant to this cause of action, Tru-Flex and Pro-Flex jointly and collectively were manufacturers, designers, distributers, and/or individuals and/or entities which placed a defective product into the stream of commerce. The Pro-Flex® CSST product was supplied by these Defendants in the defective condition, which rendered it unreasonably dangerous, and the defective condition was the proximate cause of the injury, harm, and/or damage to Plaintiffs.

98.     Section 402A of the Restatement (Second) of Torts provides that (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.  Under section 402A, the seller of a

product that is in a defective condition unreasonably dangerous to the ultimate user or consumer will be liable to that user or consumer.

99.     Tru-Flex and Pro-Flex owed a duty to design, manufacture, market, sell, distribute, and/or place into the stream of commerce products that were not unreasonably dangerous to consumers. The Defendants breached such duties by not only continuing the sale of yellow Pro-Flex® CSST without independently testing same as to the represented "fix" of bonding and grounding, but also despite knowledge of the insufficiency of broad warnings, and further by not addressing legacy installations. Strict liability in tort for such product defects is a cause of action which implicates the social and economic policy of the Commonwealth.

100.     The non-delegable duty articulated by the Second Restatement is imposed on persons or entities, such as Tru-Flex and Pro-Flex, to make and/or market its product—which "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold"—free from "a defective condition unreasonably dangerous to the consumer or the consumer's property. Pro-Flex® CSST manufactured by Tru-Flex and Pro-Flex was expected to, and did, reach Plaintiffs and Class Members' structures without substantial change in the condition in which it was designed, manufactured, tested, inspected, distributed, marketed or sold.

101.     The above-described acts and omissions resulted in harm to Plaintiffs and class members, who are experiencing realized damages in the form of property loss, structural damage, expended costs, loss of value in the marketing and sale of the residences, and increased insurability costs as described above. Plaintiffs and Class

members have further been damaged by the deceptive campaign of a "safety fix" that requires the consumer to pay significant monies to obtain additional inspections and incur bonding and grounding costs to obtain what is nothing more than an illusory safety benefit.  Plaintiffs and class members have further incurred specific remediation costs as to those structures that have already underwent requisite safety remediation and replacement to remove the Pro-Flex® CSST product.

## **Negligence - Marketing Defect/Failure to Warn**

102.    Tru-Flex and Pro-Flex failed to adequately notify the end user consumers, such as the Plaintiffs, of the unobvious danger inherent in Pro-Flex® CSST.

103.    Tru-Flex and Pro-Flex knew or reasonably should have known of the dangers that inherently existed in their Pro-Flex® CSST product. Tru-Flex and Pro-Flex had a duty to not only warn consumers of their product, but further independently test and validate the asserted safety of same. Defendants breached this duty by failing to warn consumers both before and after the sale and/or installation of the products in question. Indeed, Tru-Flex and Pro-Flex further harmed the Plaintiffs and Class Members by participating in a campaign promoting the safety of the product and the success of the bonding and grounding "fix" and continuing its sales of new product and distracting from the harm of legacy installations.

104.    Tru-Flex and Pro-Flex have long been aware that energy buildup from electric energy generated by household current, indirect lightning strikes, or lighting strikes could disintegrate or melt the yellow jacketing, thus exposing the metal tubing underneath.

Once exposed, arcing between the metal tubing and nearby metal charged objects causes holes in the tubing, in turn leading to gas leaks, fires or explosions. And yet sales continued.

105.    Tru-Flex and Pro-Flex were negligent and breached their duty of care by negligently failing to give adequate warnings to purchasers and users of Pro-Flex®, including Plaintiffs, about the unreasonably dangerous and defective condition of Pro-Flex®, the likelihood of CSST-induced fires, and the substantial and unreasonable risk of death or personal injury Pro-Flex® creates.

106.    Despite the fact that Tru-Flex and Pro-Flex knew or should have known that Pro-Flex® was associated with and/or could cause natural-gas fed fires and creates a substantial and unreasonable risk of death or personal injury, Defendants continued to market,  manufacture, distribute and/or sell Pro-Flex® to consumers, including Plaintiffs and the Class.  Tru-Flex and Pro-Flex failed to exercise reasonable care in the design, marketing, and sales of Pro-Flex®, and further failed to inform Plaintiffs and the Class of the dangers inherent associated with using Pro-Flex® in their structures, and thus failed to adequately warn of its dangers.

107.    The cost of removing or remediating Pro-Flex® CSST is prohibitive to many structure owners, and the act of shifting the costs safety measures is the very type of market failure and economic harm consumer protection laws was designed to prevent.  Plaintiffs and the class members are left with few options – accept the danger, the increased insurability risk, and the associated diminution in value of their structures or undertake personal costly measures to mitigate the damages caused by the Defendants.

108.   As a direct and proximate result of the conduct alleged above, Plaintiffs and Class members have suffered ascertainable losses of money or property, real or personal, in the diminution of the value of their property since same is unsafe as compared to safer alternatives, in incurring ineffective extraneous costs for inspection, bonding and grounding, in removal and remediation costs, and increased premiums to account for the higher-risk insurability of the structures.

**Unfair Trade Practices**

109.   Plaintiffs and the proposed Class members are "person[s]" as that term is defined by 73 P.S. § 201-2(2), Pennsylvania's Unfair Trade Practices and Consumer Protection Law. "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities. Plaintiffs and the proposed Class members purchased goods from Tru-Flex and Pro-Flex for personal, family, or household purposes in residential natural gas distribution.

110.   Tru-Flex and Pro-Flex conducted acts of unfair methods of competition, and acted unfairly and deceptively in the design, manufacture, marketing, sale, and distribution of the Pro-Flex® CSST product.  These Defendants failed to disclose information available to them concerning the inherent dangers of Pro-Flex® CSST, and then actively engaged in a campaign advocating the supposed safety of the product through the "bonding and grounding" fix.  Furthermore, Defendants continue to manufacture, market, and sell a product known to be defective when used for its specific purpose, and engaged in unfair methods of competition and unfair or deceptive acts prohibited by the Pennsylvania Unfair

Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.

111.   Tru-Flex and Pro-Flex's conduct and omissions alleged herein occurred throughout the Commonwealth of Pennsylvania, and constitutes deceptive conduct that creates a likelihood of confusion or misunderstanding in connection with the usefulness, quality, safety and desirability of Pro-Flex® CSST.  The conduct and omissions alleged herein violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4), including but not limited to:

(i)     Passing off goods or services as those of another;

(ii)    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii)   Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

*** 

(v)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

*** 

(vii)   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

*** 

(ix)    Advertising goods or services with intent not to sell them as advertised;

***

(xxi)  Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

112.  These unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs and the Class.

113.  Plaintiff and other members of the Class seek to recover those damages authorized by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, § 201-9.2. Plaintiff and the proposed Class have suffered harm in the form of diminution in value, monetary losses from the inspection, removal, and remediation of the CSST product, and monetary losses arising from adjustments to the insurability of the structures. Therefore, they seek to recover actual damages or one hundred dollars ($100), whichever is greater; that the award be increased up to three times the actual damages sustained, but not less than one hundred dollars ($100); and, for such additional relief as is necessary or proper, including but not limited to costs and reasonable attorney fees.

## Injunctive Relief

114.  Plaintiffs hereby seek injunctive relief to enjoin the CSST Defendants from further selling, marketing, distributing, and/or placing the Pro-Flex® CSST in the stream of commerce without making it safe for its ordinary and/or intended purposes by:

a)    Appropriately and properly insulating Pro-Flex® CSST; and

b)    Warning all consumers, including direct notification of homeowners as well as distributers and/or installers, regarding the dangers of Pro-Flex® CSST, even if bonded and grounded, when exposed to electrical current.

## RELIEF REQUESTED

115.  Plaintiffs Adams Pointe I, L.P., Adams Pointe II, L.P., Bayberry North

Associates, LP, and Betters Real Estate Holdings, LLC, Individually and as Class

representatives on behalf of all similarly situated persons and/or entities respectfully request

that the Court grant the following relief and/or enter judgment against the named Defendants,

jointly and severally as follows:

a)   Certify this cause of action as a class action pursuant to Rule 23 and appoint Plaintiffs as Class representatives and Plaintiffs' counsel as Class counsel;

b)   Order that Defendants must pay for notice to be sent to all class members;

c)   Find that the named Defendants are jointly and severally liable for Plaintiffs' and Class Member's injuries and economic losses;

d)   Award appropriate monetary damages to Plaintiffs and the proposed Class in an amount equal to losses from fire to personal property;

e)   Award appropriate monetary damages to Plaintiffs and the proposed Class in an amount equal to the amount to remove the defective product and install safely designed gas pipes;

f)   Alternatively, or in further conjunction with the above damages, award an amount equal to inspection costs and installation of additional safety features, including but not limited to items such as gas breaker valves;

g)   Alternatively, or in further conjunction with the above damages, award an amount equal to the loss or diminution in value of a structure in which the product is installed;

h)   Alternatively, or in further conjunction with the above damages, award appropriate monetary damages equal to the risk coverage costs and premiums imposed by third party carriers due to the presence of CSST product;

i)   Award such equitable relief permitted, including an injunction requiring Defendants to notify all Class Members that they are entitled

to submit an additional or supplemental request for payment in connection with prior loss and/or damage to their structures and/or premises;

j)      Order Defendants to engage in accurate, corrective educational advertising;

g)      Award pre-judgment interest to prevent Defendants from receiving unjust enrichment from their improper conduct;

h)      Award reasonable and necessary attorneys' fees and costs to Class counsel; and

i)      Award such other and further relief in law or in or equity as the Court determines fair, reasonable, appropriate, and/or just deems just;

Respectfully submitted,

Dated: June 7, 2016                    */s/ D. Aaron Rihn*
                                       D. AARON RIHN, ESQUIRE (Pa. Bar No. 85752)
                                       ROBERT PEIRCE & ASSOCIATES, P.C.
                                       707 Grant Street
                                       Suite 2500
                                       Pittsburgh, PA 15219
                                       Telephone: (412) 281-7229
                                       Facsimile: (412) 281-4229
                                       Email: arihn@peircelaw.com

                                       N. SCOTT CARPENTER (pending Pro Hac Vice)
                                       REBECCA BELL-STANTON (pending Pro Hac Vice)
                                       CARPENTER & SCHUMACHER, P.C.
                                       Parkway Centre IV
                                       2701 N. Dallas Parkway, Suite 570
                                       Plano, TX  75093
                                       Telephone: 972-403-1133
                                       Facsimile: 972-403-0311
                                       Email: scarpenter@cstriallaw.com
                                              rstanton@cstriallaw.com

                                       JASON MEDURE (Pa. Bar No. 90976)
                                       MICHAEL BONNER (Pa. Bar No. 86023)
                                       MEDURE BONNER BELLISSIMO PEIRCE & DALEY
                                       22 North Mill Street

New Castle, PA 16101
Telephone: (724) 653-7855
Facsimile: (724) 202-7918
Email: jmedure@medurebonnerlaw.com
          mbonner@medurebonnerlaw.com

JOSEPH S. BELLISSIMO (Pa. Bar No. 70897)
BELLISSIMO & PEIRCE
22 North Mill Street
New Castle, PA 16101
Telephone: (724) 758-5544
Facsimile: (724) 752-9522
Email: jsblaw@prodigy.net

ATTORNEYS FOR THE PLAINTIFFS AND
CLASS MEMBERS