IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAMS POINTE I, L.P, ADAMS POINTE II, L.P., BAYBERRY NORTH ASSOCIATES L.P., BETTERS REAL ESTATE HOLDINGS, L.P., JBCO; ADAMS POINTE III, L.P. ADAMS POINTE NORTH CONDOMINIUM ASSOCIATION, ADAMS POINTE MASTER ASSOCIATION, L.P., COULTER & GRAHAM, L.P., MICHAEL AND KATHLEEN BICHLER, AND JOHN EVANS, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED | § § § § § § § § § § § § § | Civil Action No.: 2:16-cv-00750-CRE |
| Plaintiffs, | § § | United States Magistrate Judge Cynthia Reed Eddy |
| vs. | § § | |
| TRU-FLEX METAL HOSE CORP., TRU-FLEX, LLC, and PRO-FLEX LLC | § § § | |
| Defendants. | § § | |
| TRU-FLEX METAL HOSE CORP., TRU-FLEX, LLC, and PRO-FLEX LLC | § § § | |
| Third-Party Plaintiffs, | § § | |
| vs. | § § | |
| RIDGE DEVELOPMENT CORP.; RIDGE MANAGEMENT & DEVELOPMENT CORP.; ADAMS POINTE CONSTRUCTION CORP.; ADAMS POINTE SOUTH VILLAGE OWNERS ASSOC., L.P.; ADAMS POINTE CONDOMINIUM ASSOCIATION; WARD MANUFACTURING, LLC d/b/a WARDFLEX; WESBANCO BANK, INC. f/k/a ESB BANK; ELLWOOD INVESTORS, LLC; WEAVER MASTER BUILDERS, INC.; C.J. BETTERS BUILDERS, LLC; BOVARD - ANDERSON COMPANY; CLEARWATER ESTATES CONDOMINIUM ASSOC.; UNIQUE INDUSTRIAL PRODUCT COMPANY; PRO-FLEX HOLDINGS, LLC (OF TEXAS) | § § § § § § § § § § § § § § § § § | |
| Third Party Defendants. | § § § | |

<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

NOW COME Plaintiffs, Adams Pointe I, L.P, Adams Pointe II, L.P., Bayberry North Associates L.P., Betters Real Estate Holdings, L.P, Adams Pointe III, JBCO, Adams Pointe North Condominium Association, Adams Pointe Master Association, L.P., Coulter & Graham, L.L.P., and Michael and Kathleen Bichler, and hereby file the following Second Amended Complaint:

<u>**INTRODUCTION AND BACKGROUND OF CASE**</u>

1.     This case arises from the design, manufacture, distribution, and deceptive marketing of a product known by the pertinent industry to be dangerous when used for the purpose intended.

2.     In 1995, Tru-Flex Metal Hose Corp. began manufacturing, marketing, distributing and selling of a flexible gas piping system throughout the United States, including Pennsylvania, known as Corrugated Stainless-Steel Tubing ("CSST") for use in residences and in other structures.[1]

3.     CSST consists of continuous, 300-series flexible stainless-steel pipe encased in an insulative outer (yellow) jacket.  The yellow jacket material has the thickness of approximately four sheets of paper. Tru-Flex Metal Hose Corp. trademarked its CSST product as in 1996. In the early 2000's, Tru-Flex Metal Hose Corp. changed the brand name of its yellow-jacketed CSST product, and began to distribute under the

---

[1]     Upon information and belief, Unique Industrial Product Company sold yellow-jacket CSST to Tru-Flex Metal Hose Corp. pursuant to Tru-Flex Metal Hose Corp.'s specifications. Tru-Flex Metal Hose Corp. thereafter completed the CSST system with the Tru-Flex patented fittings, printed the identifying information in compliance with regulatory requirements under the Tru-Flex tradename.

newly-branded Pro-Flex® mark.

4.      In 2010, Tru-Flex Metal Hose Corp. was purchased by TGP Investments, Inc.  Corporate restructuring led to name changes, mergers, and the formation of new subsidiary divisions – Pro-Flex, LLC and Tru-Flex LLC.  During and after such restructuring, the manufacturing, distribution, and sale of yellow-jacketed CSST Pro-Flex® continued by Pro-Flex and the Tru-Flex entities.

5.      In 2013, Tru-Flex Metal Hose Corp. entered into a Unit Purchase Agreement with Pro-Flex Holdings LLC (of Texas) for the sale of all equity interests in Pro-Flex, LLC., namely Pro-Flex® CSST. Pro-Flex Holdings (Of Texas) thereafter manufactured, distributed, and sold Pro-Flex® CSST until such time as Pro-Flex® CSST business was again sold resulting in a new entity, Defendant Pro-Flex, LLC.

6.      Tru-Flex Metal Hose Corp., Tru-Flex, LLC, Pro-Flex Holdings LLC (Of Texas) and Pro-Flex, LLC (hereinafter collectively referred to as the "Pro-Flex® CSST Entities" [2]) engaged in the specification design, manufacturing, marketing, distributing and selling of Pro-Flex® CSST; Unique Industrial Product Co. fulfilled the manufacturing obligations of Pro-Flex® CSST, selling the inherently dangerous product to the Pro-Flex® CSST Entities and other customers.

7.      Indeed, despite knowing that the yellow jacket material encased around the metal tubing transporting natural gas is highly susceptible to disintegration upon electrical insult, the Pro-Flex® CSST Entities marketed and distributed the Pro-Flex®

---

[2]     Unique Industrial Product Co. may also have engaged in the marketing, distribution, and sale of Pro-Flex® CSST during a limited period in 2012-13. During such time of ownership and/or sale, Unique should also be considered one of the Pro-Flex® CSST Entities.

yellow CSST in a designed condition that necessitates, by admission, a mitigation retrofitting.

8.     Although the CSST industry became internally aware of the dangers associated with the use of yellow CSST much earlier, in 2004 the industry began to acknowledge to its direct customers that yellow-jacketed CSST products are prone to catastrophic failure when exposed to electrical energy. As manufacturers holding the greatest share of the CSST market ceased distribution of the yellow-jacket CSST product to even qualified plumbing professionals, the Pro-Flex® CSST Entities continued to *increase* sales of the inherently defective product to plumbing consumers and through contracts with retailers to "do-it-yourself" consumers and untrained workers.

9.     Tru-Flex Metal Hose Corp., Tru-Flex, LLC, Pro-Flex Holdings LLC (Of Texas) and Pro-Flex, LLC possessed actual knowledge that yellow-jacket Pro-Flex® CSST is placed into the stream of commerce without sufficient thickness to protect against combustion after a lightning strike or potentially even household current. Despite such knowledge, Tru-Flex Metal Hose Corp., Tru-Flex, LLC, Pro-Flex Holdings LLC (Of Texas) and Pro-Flex, LLC continue to manufacture and distribute same to "do-it-yourselfers" and professional installers alike in the Commonwealth of Pennsylvania.

10.    The Pro-Flex® CSST product is installed in real property owned by the named Plaintiffs.  Such product has been the cause of property-damaging fires, loss of value to the structures, costs for inspection and repair, and retrofitting costs.

## PARTY IDENTIFICATION AND APPEARANCE

### *Individually Named Plaintiffs*

11.     ADAMS POINTE I, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. The Pointe at Adams Ridge - subdivision I, a residential condominium subdivision, is located in Mars, Butler County, Pennsylvania. ADAMS POINTE I, L.P. is an originally named plaintiff and seeks individual damages.

12.     ADAMS POINTE II, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. The Pointe at Adams Ridge – subdivision II, a residential condominium subdivision, is located in Mars, Butler County, Pennsylvania. ADAMS POINTE II, L.P. is an originally named plaintiff and seeks individual damages.

13.     ADAMS POINTE III, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. The Pointe at Adams Ridge – subdivision III, a residential condominium subdivision, is located in Mars, Butler County, Pennsylvania. ADAMS POINTE III, L.P. was joined as a named plaintiff on April 26, 2017, and seeks individual damages.

14.     BAYBERRY NORTH ASSOCIATES, LP is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100

Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001.  BAYBERRY NORTH ASSOCIATES, L.P. is an originally named plaintiff and seeks individual damages.

15.     BETTERS REAL ESTATE HOLDINGS, LLC is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001.  BETTERS REAL ESTATE HOLDINGS is an originally named plaintiff and seeks individual damages.

16.     ADAMS POINTE NORTH CONDOMINIUM ASSOCIATION, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 1000 Adams Pointe Blvd., Mars, Butler County, Pennsylvania 15001. The North Condominium Association is the condominium association for the north and central designations at the Pointe at Adams Ridge, a residential condominium subdivision. ADAMS POINTE NORTH CONDOMINIUM ASSOCIATION was joined as a named plaintiff on April 26, 2017, and seeks inclusion in this suit as an individual Plaintiff, and further by official resolution seeks inclusion on behalf of each of the individual owner members of the Association in accordance with its governing documents.

17.     ADAMS POINTE MASTER ASSOCIATION, L.P. is a limited partnership created in the Commonwealth of Pennsylvania with its principal place of business at 100 Bet-Tech Drive, Aliquippa, Beaver County, Pennsylvania 15001. ADAMS POINTE MASTER ASSOCIATION was joined as a named plaintiff on April

26, 2017, and seeks inclusion in this suit as an individual Plaintiff, and further by official resolution seeks inclusion on behalf of each of the Association members in accordance with its governing documents.

18.     JBCO, has as its principal place of business 607 Oswego Dr., Gibsonia, Butler County, Pennsylvania 15044.  JBCO owns individual units at the Pointe at Adams Ridge for the primary purpose of leasing same as individual residences, and was joined as a named plaintiff on April 26, 2017.

19.     COULTER & GRAHAM, LLP is a limited liability partnership created in the Commonwealth of Pennsylvania with its principal place of business at 128 W. Cunningham St., Butler, Pennsylvania 16001.   COULTER  &  GRAHAM  owns individual units at the Pointe at Adams Ridge for the primary purpose of leasing same as individual residences, and was joined as a named plaintiff on April 26, 2017.

20.     MICHAEL AND KATHLEEN BICHLER are individuals that own their private residence located at 226 Adams Pointe Blvd., Mars, Butler County, Pennsylvania. The BICHLERS were joined as named plaintiffs on April 26, 2017, and they seek recovery for individual damages.

*Defendants*

21.     TRU-FLEX METAL HOSE CORP.[3] was an Indiana corporation with a principal place of business at 2391 South State Road 263, West Lebanon, IN, and has already appeared and made answer in this suit.

22.     TRU-FLEX, LLC[4] is an Indiana corporation, and has already appeared and made answer in this suit.

23.     PRO-FLEX, LLC[5] ("Pro-Flex") is an Indiana corporation and has already appeared and made answer in this suit.

24.     UNIQUE INDUSTRIAL PRODUCT COMPANY (Unique") is a Texas limited partnership and has already appeared in this suit.[6]

25.     PRO-FLEX HOLDINGS, LLC (OF TEXAS) is a domesticated Texas limited liability company and has already appeared in this suit. [7]

---

[3]     Tru-Flex Metal Hose Corp. was reformed for tax purposes to from Tru-Flex Metal Hose Corp. into Tru-Flex Metal Hose LLC in 2010 as a part of corporate restructuring after acquisition by TGP Investments, Inc.  In 2014, Tru-Flex Metal Hose LLC merged with Tru-Flex, LLC with Tru-Flex LLC as the surviving corporate entity. Defendants Tru-Flex, LLC and Tru-Flex Metal Hose Corp. are herein collectively referred to as "Tru-Flex."

[4]     Tru-Flex, LLC was originally formed in 2010 as a part of the corporate restructuring of Tru-Flex Metal Hose Corp. after same was acquired by TGP Investments, Inc.

[5]     Pro-Flex, LLC was originally formed in 2010 as a part of the corporate restructuring of Tru-Flex Metal Hose Corp. after same was acquired by TGP Investments, Inc.

[6]     Unique was previously joined in this action as a Third-Party Defendant and in accordance with Federal Rule of Civil Procedure 14 is included as a Defendant clarified herein.

[7]     Pro-Flex Holdings was previously joined in this action as a Third-Party Defendant and in accordance with Federal Rule of Civil Procedure 14 is included as a Defendant clarified herein.

## JURISDICTION AND VENUE

26.     This Court has personal jurisdiction over these business entities by virtue of the extensive amount of business these corporations conducted within the Commonwealth of Pennsylvania and, further, because of the specific conduct at issue.

27.     All of these business entities have appeared and answered suit and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  Plaintiffs are citizens of Pennsylvania. Defendants sold and continue to sell the Pro-Flex® CSST yellow-jacket product in Pennsylvania.  Furthermore, real property and residences owned by Plaintiffs in which the Defendants' Pro-Flex® CSST product is installed are located here in the Commonwealth of Pennsylvania.

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.

29.     Venue is proper in this District pursuant to 28 U.S.C. §1391. These entities engage in continuous and systematic activities within Pennsylvania. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL BACKGROUND

30.     Although Tru-Flex Metal Hose Corp. began its corporate history in 1962, its manufacturing and distribution of yellow-jacketed CSST did not begin until the 1990's with its "Tru-Flex" CSST product. In the early 2000's, Tru-Flex Metal Hose Corp. changed the brand name of its yellow-jacketed CSST product, and began to distribute under the newly-branded Pro-Flex® mark, owned by Tru-Flex Metal Hose Corp.

31.     The Pro-Flex® CSST Entities claim that Pro-Flex® CSST is more installer friendly and safer than traditional black iron pipe gas delivery systems used by plumbers across the United States for more than 100 years. www.proflexcsst.com.

32.     Unlike black iron pipe, yellow jacket CSST is susceptible to degradation due to exposure to fire or electrical energy from lightning. This energy can cause puncture holes in the tubing itself, allowing gas to escape with resulting fire and/or explosion in the structure where the yellow CSST is installed.

33.     Knowledge of the propensity of yellow jacket CSST to fail when subjected to electrical insult has been known by CSST manufacturers for decades; indeed, circulated memorandums and trade materials between 1998 and 2004 acknowledged that "CSST may be damaged as a result of lightning striking structures where CSST is installed" and that "pin holes" being formed in the sidewall of CSST.

34.     Although the agencies involved in reporting the source of structure fires did not yet begin classifying incidents as an effect of indirect lightning strikes on the natural gas distribution system, the CSST industry itself began associating multiple incidences of lightning induced CSST failures to fire scenes.

35.    The class action styled *Lovelis, et al. v. Titeflex, et al.*, Case No. Civ-2004-211, Clark County, Arkansas brought the dangers of the yellow-jacketed CSST product to a tipping point, and the CSST industry finally began to acknowledge the catastrophic risks posed by the inherent defect in the yellow-jacketed CSST product.  The major manufacturers of CSST began to represent that bonding and grounding the CSST system might mitigate the imminent harm posed by electrical imposition on the jacketing material. However, as noted by the Fuel Gas Committee, the validity of bonding and grounding as either a solution or mitigation effort remained untested.

36.    In 2008, "Tru-Flex Metal Hose Corp. required proper bonding of Pro-Flex gas piping systems in a structure to the structure's electrical grounding system."

37.    Abandoning those consumers whose homes already contained the yellow-jacket CSST product, the Pro-Flex® CSST Entities continued the sale and marketing of the defective product with installation modifications for the untested bonding and grounding mitigation "correction" to the product.  And although holding out the representation that bonding and grounding might make their dangerous product "safer," the primary manufacturers shifted concentration to the use of safer alternative design of the product that could conduct, rather than focus, electrical current.  The Pro-Flex® CSST Entities, however, did not.

38.    At all times relevant to this action, the Pro-Flex® CSST Entities jointly and collectively designed, manufactured, marketed, sold, and distributed the Pro-Flex® brand of yellow-jacketed CSST, or otherwise placed same into the stream of commerce, which ultimately was installed in Plaintiffs' buildings, residences and condominiums as well as

in hundreds of thousands of other homes and buildings.

**Product Background - Yellow-Jacketed CSST – Dangerous and Defective.**

39.     Yellow-jacket CSST is uniquely susceptible to degradation and failure when exposed to electrical insult. *See* Mark Goodson and Mark Hergenrether, "*Lightning Induced CSST Fires*" (August 2011), available at www.goodsonengineering.com/wp-content/uploads/2011/08.   The heat of the electrical event penetrates the thin walls of the CSST, even though the electrical arcs last only a fraction of a second. When the piping melts, the gas inside escapes and causes a gas-fueled fire.

40.     "Lightning is a highly destructive force.  Even a nearby lightning strike that does not strike a structure directly can cause systems in the structure to become electrically energized.  This power surge can potentially puncture a hole in CSST and cause a fire." www.csstsafety.com/CSST-FAQs. Electrical energy will travel through any conductive path, such as gas piping, until it is able to reach the ground. Traditional black iron pipes are able to withstand this energy.  Yellow-jacketed CSST cannot.

41.     It has been estimated that the wall thickness of CSST measures approximately .011 inches. The wall thickness, or lack thereof, of the Pro-Flex® CSST is too thin to withstand the electrical energy produced by lightning strikes or even certain household currents unlike its traditional counter-part of black iron pipe.

_Industry Knowledge._

42.     For the industry, the danger is conceded - yellow CSST "fails in the presence of lightning." SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas Piping to Mitigate Lightning Related Damage*, The Fire Protection Research

Foundation (April 2011), www.nfpa.org/assets/files/PDF/Research/CSST.  If a direct or indirect lightning strike energizes CSST, the insulative material will not be able to carry the charge, which will look to jump to a less resistant pathway. Indeed, the minimum amount of energy emitted required to generate the "arc" is the same as one would find in ordinary household electric current and can emanate from household appliances.

43.    Not only does yellow CSST not stop the arcing, it actually helps cause it. As experts have noted, the yellow CSST actually has no conductive value, meaning it does not distribute the electric charge.  Instead, it serves to focus the energy from an arc into the weakest points of the yellow-jacketing, disintegrating those points first and exposing the metal tubing to further energy, causing holes or perforations in the gas lines.

44.    The CSST industry is aware that inevitably, after installation, CSST is exposed to electric current.  It is frequently exposed during electrical storms and lightning strikes.  But even more frequently, it is exposed in ordinary household circumstances where nearby sources of electricity – electric wiring or appliances – cause a "flashover" or an electric "arc." Despite possessing awareness of the risks posed by yellow CSST when used as expected, Defendants intentionally continued sale of same.

45.    The industry has acknowledged that the mechanism of degradation of the tubing is any electrical energy source sufficient to cause an "arc" between the CSST and any nearby conductive material – *e.g.*, metal wiring, metal fasteners, metal bolts, etc. – which concentrates at a point to puncture or melt a hole in the tubing.

_Alleged Mitigation Through An Ineffective "Fix."_

46.    Originally, the major manufacturers denied allegations that the yellow-

jacketed CSST product could not be made safe by proposing to "mitigate" the dangerous propensities of yellow-jacket CSST. This mitigation involved the inclusion of a "bonding and grounding" fix in an effort to *reduce*, not correct or eliminate, the latent defective condition of the CSST product in situations involving one of the identified dangers - indirect lightning strikes.

47.     "Bonding" essentially attempts to connect or tie all metal points in the gas system together so that they conduct at the same electrical potential level, theoretically preventing an "arc" between areas of different electrical potential. The National Electric Code ("NEC") defines *bonding* as, "The permanent joining of metallic parts to form an electrically conductive path that ensures electrical continuity and the capacity to conduct safely any current likely to be imposed."

48.     "Grounding" essentially attempts to provide stray electrical current with a path to the earth (ground).  The NEC defines *grounding* as, "Establishing a connection, whether intentional or accidental, between an electrical circuit or equipment and the earth or to some conducting body that serves in place of the earth." This is accomplished by attaching a larger wire (a ground wire or other ground mechanism) to the tubing to "remove" the electrical charge.  The charge transfers to the ground wire or other "ground" to direct the electric charge away from the tubing.

49.     Without first validating whether the risk of using yellow-jacketed CSST was sufficiently compromised by bonding and grounding future installations, and without regard for any prior legacy installation, bonding and grounding guidelines were included in industry-wide revised Design and Installation Manuals provided to certified installers

(not the ultimate homeowner) for purposes of new installations of those defendant manufacturers' yellow-jacket product. Industry regulators almost immediately questioned the purported safety "fix," noting the absence of sufficient validation of the representations of bonding and grounding as a safety solution.

50.     Although representations of a safety mitigation in the form of bonding and grounding arose during the time period of the original class action, and the Standards Council's Task Force began questioning such representations almost immediately, CSST manufacturers did not perform any validation testing of the bonding and grounding "fix" until 2013, *five years* after launching a campaign to disguise the known dangers of the yellow-jacket CSST product.[8]

51.     The Pro-Flex® CSST Entities joined the presumptive bandwagon of the proponents of the bonding and grounding "mitigation" proposal for future installations. And yet, none of the Pro-Flex® CSST Entities actually tested the validity of these representations on the Pro-Flex® CSST product.

52.     Despite the concerns voiced by regulators during this time period regarding the lack of validation, the Pro-Flex® CSST Entities continued the marketing and sale of Pro-Flex® CSST. As the leading manufacturers began to pursue the available safer

---

[8]     The methodologies and conclusions asserted in the 2013 GTI Report have been criticized as incomplete, deceptive, and the result of collusion between certain CSST manufacturers, GTI, and other third-party contributors.  Although the targeted safety campaign regarding bonding and grounding insinuated a "mitigation" of the inherent danger of CSST on the whole, the testing actually performed *excluded* all conditions but-for indirect lightning strikes. On October 12, 2015, GTI provided notice to the NFPA Standards Council of revised information "prepared by Gas Technology Institute ("GTI") for the CSST Project Sponsors" in the form of a "2015 Revised Draft Final Report."  The proposed revised report acknowledges the alteration of certain data represented in the original 2013 GTI report.

designs available for flexible tubing, ultimately ceasing the sale of yellow-jacketed CSST altogether, the Pro-Flex® CSST Entities sought to increase sales of the dangerous system.

***Product Dangers - Pro-Flex® CSST – Ongoing Harm.***

53.     The Pro-Flex® CSST Entities continue to promote the sale of its patented yellow-jacket CSST system, Pro-Flex® CSST, despite both an industry and internal recognition that a safer alternative design is available.

54.     Promotion of the product occurs to not only professionals but also the public at large through sales at retail stores and third-party online locations.  These acts are ongoing despite the Pro-Flex® CSST Entities knowledge that Pro-Flex® CSST is not able to withstand electrical charge due to its corrugated design and thin walls. Indeed, in marketing materials related to Pro-Flex® CSST, Tru-Flex and Pro-Flex acknowledge that "electrical arcing is the single most dangerous threat to safety in a lightning scenario."

55.     The Pro-Flex® CSST Entities explicitly admit that "[a]rcing can cause damage to CSST." www.proflexcsst.com/docs.  Tru-Flex and Pro-Flex further admit "electrical arcing is the single most dangerous threat to safety in a lightning scenario." http://www.structuretech1.com/wp-content/uploads/2015/04/Ship-in-the-fog-flyer.pdf. Despite these generalized public statements, however, the Pro-Flex® CSST Entities continued the sale of its yellow-jacketed system.

56.     The Pro-Flex® CSST Entities modified installation guides to include the "bonding and grounding" instruction for new installations but did not provide remedies or relief for legacy installations.  Additionally, unlike other manufacturers, the Pro-Flex® CSST Entities opted not to modify the design of its CSST product to one with an arc-

resistant jacket until after this lawsuit was originally filed, continuing instead with the use of the insulative yellow jacket and relying solely on the instruction for future installations to include bonding and grounding.

57.     The Pro-Flex® CSST Entities continued to manufacture, market, and distribute yellow jacket Pro-Flex® CSST despite the industry's acceptance of safer alternative designs (for example, black jacket CSST), relying on the possibility of a *mitigation* of *some of the risk* posed by the inherent condition of the Pro-Flex® CSST.

58.     Unfortunately for the ultimate consumer, the "bonding and grounding" recommendation to future installers of the Pro-Flex® CSST product not only fails to remedy the dangerous product as it exists in legal structures, but to those that receive the information it actually compounds the harm by falsely asserting bonding and grounding is sufficient to remedy the inherent dangerous propensities of yellow-jacketed CSST.

59.     Not only does this "fix" as announced for new installations do nothing for legacy installations of Pro-Flex® CSST, it conveniently misses a critical point - the yellow jacketing material placed on the Pro-Flex® CSST *focuses* the electrical energy onto the surface of the CSST, making bonding and grounding an impotent solution.

60.     Despite claims from the Pro-Flex® CSST Entities that Pro-Flex® CSST is safe(r) when properly bonded, even if all mechanical and electrical systems of the property are properly bonded, yellow Pro-Flex® CSST still poses a risk of a lightning-related fire and risks from even ordinary household current.  Although admittedly aware

of these dangers, and the availability of safe designs,[9] these Entities not only continue to market and distribute the yellow-jacketed version of CSST, but do so in violation of regulatory obligations for purchase and ultimate installation of the gas-delivery system.

***Product Distribution - Pro-Flex® CSST – Ongoing Harm***

61.     The Pro-Flex® CSST Entities have held themselves out to the professional industry, retailers, and individual consumers as the manufacturers of Pro-Flex® CSST. Indeed, the Pro-Flex® brand name is printed along the yellow-jacket of their marketed CSST product.

62.     CSST must be installed by a qualified plumbing professional and in accordance with the Manufacturer's Design and Installation (D&I) Guide as well as applicable plumbing codes.  Any additional bonding of CSST piping must be performed by licensed electricians since same is electrical, not plumbing, professional work.

63.     The Pro-Flex® CSST Entities continue the production and distribution of the yellow-jacketed Pro-Flex® CSST product, asserting that their product is safe enough when installed as directed.  Ultimately, these Pro-Flex® CSST Entities take the position that third-parties must assume the role of ensuring the safety of the Pro-Flex® CSST product regardless of the industry-wide admission that the danger is inherent to the yellow-jacketed product.     According to these Pro-Flex® CSST Entities, their

---

[9]     Although these Defendants were provided opportunities to manufacture a safer "black jacket" version of CSST, they declined such opportunities in part due to the requirement that manufacturing insight would be voluntarily provided to them upon condition to cease the sale of the dangerous yellow-jacketed product. Indeed, even though the safer design options were available for their own development without the voluntary assistance of other manufacturers, these Defendants continued the delay of manufacturing and distributing the safer product.

responsibility ends upon the realized sale because third-party entities have assumed the responsibility to meet industry-accepted guidelines.

64.     On the one hand, the Pro-Flex® CSST Entities admit that industry standards require the sale of their product to qualified individuals trained in the plumbing installation of their product.  CSST systems must be installed by qualified installers who are trained in the methods required by that brand's system, and who meet all of the qualifications of the state and local codes and of the authority having jurisdiction where the CSST is installed.

65.     These Pro-Flex® CSST Entities, however, simultaneously flout regulations regarding distribution and sale to plumbing professionals trained in the installation of Pro-Flex® CSST by emphasizing retail availability to the public at large. Pro-Flex® CSST is available to do-it-yourself installers at hardware and home supply stores, where the only "training" provided is an installation manual that is often sold separately. The marketing and distribution chain of the Pro-Flex® CSST product includes independent hardware stores, large "box store" retailers, third-party catalogue sales, and online outlets. In the end analysis, the Defendants absolve themselves from complying with industry practices at the point of distribution to the seller of the product.

66.     According to the Pro-Flex® CSST Entities, the down-stream seller assumes the responsibility for ensuring the purchaser of the Pro-Flex® CSST product is not only qualified by appropriate regulations but is further trained in the installation of the Pro-Flex® yellow-jacket CSST.  Additionally, although contrary to both the language and intent of the industry standards, "self-training" is permitted as to Pro-Flex® CSST.

Furthermore, this "self-training" should then result in the personal completion of a certification card, which according to the Defendants, is sufficient to meet any responsibility of the manufacturer as to installation by qualified individuals.

67.     Pro-Flex® CSST itself is inherently flawed despite the Pro-Flex® CSST Entities insistence that third-parties may be able to mitigate against the dangers of the product. And such insistence to divert responsibility is particularly egregious as to Pro-Flex® CSST in light of manner of distribution, "training," and ultimate sale.

***Plaintiffs' Properties***.

68.     The Plaintiffs own residences affected by the defective Pro-Flex product. Specifically, the Plaintiffs own multiple condominiums, quad duplexes, carriage homes, and townhomes in Pennsylvania for personal possession, leasing, and sale.

Adams Pointe I, II, and III

69.     On June 14, 2015, nearby lightning activity caused a fire at 220 Adams Pointe Boulevard, Mars, PA.  After a fire investigation by third parties, it was determined that the Pro-Flex® CSST installed in the condominium unit failed as a result of electrical insult, releasing natural gas into the unit, which was ignited and caused significant property damage not only to the contents and structure of the apartment unit with the insulted CSST, but to neighboring condominium units as well.

 



70.     The structure that experienced the fire had been duly inspected by local code officials prior to the catastrophic failure event.  Upon receipt of the required final inspection report indicating compliance with the Construction Code Act and Uniform Construction Code, building code officials issued the requisite certificate of occupancy for each of the structures owned by Adams Pointe I, II, and III, signifying installation had occurred in accordance with applicable standards and codes.

71.     The fire caused property damage to contents, appliances, and both the

interior and exterior condominium structure, and further resulted in third-party expert investigation, repair and replacement of the natural gas piping system. These damages were actual and realized.

72.     Adams Pointe I, II, and III experienced additional harm upon attempts to have residences placed into a sales condition.  Inspectors, becoming aware of the inherent risks of yellow-jacketed CSST, included notation in home inspections of the material defect and danger posed by the product.  Such specific inclusion in home inspections impacted sales and the ultimate value of such residences.

73.     Furthermore, upon noting the presence of yellow CSST, home inspectors included the need to incur additional inspection costs by licensed electrical contractors. Upon realizing the industry knew of the inherent risk of the yellow-jacketed CSST, and had developed a safer alternative design, Adams Pointe I, II, and III began to remediate the imminent harm posed by the previously-installed product.

74.     Adams Pointe I, II, and III began disclosing Pro-Flex® CSST in mandated sellers' disclosures in light of notations by inspectors regarding its presence, and the associated concern that the dangers associated with same might fall under the obligations imposed on sellers to reveal the condition to prospective buyers.

75.     Home sellers must, by law, advise potential buyers about "known material defects" that are not readily observable, including structural and other problems, before the sale is completed. The standard form covers the home's structure, such as the roof,

basement, foundation and walls. Buyers also need to know whether the plumbing, electrical, heating and air conditioning systems are in good, working order. Such specific inclusion in sellers' mandated disclosures impact sales and the value of such residences.

76.    Upon realizing the industry knew of the inherent risk of the yellow-jacketed CSST, and had developed a safer alternative design, Adams Pointe I, II, and III began to remediate the imminent harm posed by the previously-installed product in order to address the direct danger to their property from fire as well as to stem any damages connected to the mere presence of the dangerous product in their structures.

Bayberry North and Betters Real Estate

77.    Bayberry North and Betters Real Estate experienced actual harm and damages from the installation of yellow-jacketed CSST.  Bayberry North and Betters Real Estate own residential properties with yellow-jacket CSST installed, and once made aware of the imminent danger lurking in the material condition of such product, these Named Plaintiffs began mitigating the risk by removing the dangerous yellow-jacketed version and replacing same with the safer design offered by black-jacketed CSST.  Such efforts resulted in actual monetary losses by these Named Plaintiffs.

78.    Additionally, during the course of a residential sale, Bayberry North and Betters Real Estate were made aware that the allegations and disclosures of yellow-jacketed CSST as a material defect affected the safety of the property, and therefore, began undertaking the monumental task of remediating.

JBCO and Coulter & Graham

79.    JBCO and Coulter & Graham own residential properties located within the

Adams Pointe community, and these residential properties contain Pro-Flex® CSST, which is considered a defect material to the safety of the property.  A material defect is a problem that cannot be corrected with simple maintenance – it is something that will require significant effort to repair.   Pro-Flex® CSST falls into such category, which affects the value of the owned structures.  JBCO and Coulter & Graham must incur the monetary damages associated with remediating the imminent harm, while currently experiencing the loss of value in their property.

80.    The residences owned by JBCO and Coulter & Graham were duly inspected by local code officials.  Upon receipt of the required final inspection report indicating compliance with the Construction Code Act and Uniform Construction Code, building code officials issued the requisite certificate of occupancy for each of the completed units owned by JBCO and Coulter & Graham signifying installation had occurred in accordance with applicable standards and codes.

81.    Experts in electrical and mechanical failure analysis with extensive experience in the dangers of CSST propose the following: (1) convert structures to electricity only and remove all gas delivery systems; (2) retain gas delivery systems but remove all Pro-Flex® CSST from the structures and install black iron pipe; (3) remove all Pro-Flex® CSST from the structures and install gas delivery systems that do not possess the insulative yellow jacket; or (4) incur costs to install modified gas breaker valves to trigger the shut-off of natural gas to the CSST system in the event of electrical insult.

82.    In the interim, these Plaintiffs incurred expenditures in the form of the "recommended" retrofitting of the CSST system through bonding and grounding.

Adams Pointe North Condominium Association and
Adams Pointe Master Association

83.    As associations for a common interest community, the Adams Pointe North Condominium Association and Adams Pointe Master Association are directly and actually damaged by the inherently dangerous condition of Pro-Flex® CSST.

84.    Condominiums in Pennsylvania are governed by the Uniform Condominium Act, 68 Pa. Stat. §§ 3101 to 3414 (the "UCA"). Although "condominium" is a term generally used to refer to an individually-owned unit, it is also a form of ownership involving property other than the individual residence is deemed to be common property.  Adams Pointe North Condominium Association and Adams Pointe Master Association were created to pursuant to the UCA requirements to manage the common affairs of the condominium owners in the Adams Pointe Central and Adams Pointe North residential areas.

85.    Each of the structures and facilities available for use at Adams Pointe Central and Adams Pointe North duly received the requisite certificates required prior to the use or occupation of these buildings.   Such certificate is provided only after appropriate building code officials receive a final inspection report indicating compliance with the Construction Code Act and Uniform Construction Code, and further signifying installation had occurred in accordance with applicable standards and codes.

86.    At Adams Pointe, individual owners are responsible for everything "inside" of their units, and damages sustained by an owner to the interior of the residence, such as damage to any fixtures, walls, or flooring, is the responsibility of the owner to remedy.

However, damages experienced to the exterior of the unit fall under the Associations as does any damage to common buildings.

87.     After the 2015 fire, these Associations were financially accountable for exterior repairs and renovations, and realized actual damages connected to same.

88.     Furthermore, because of the obligations of the Associations regarding disclosure of important facts about common interest property at sale to a buyer, and requirements of resale disclosures for any sale after the initial sale by the developer of the property, inclusive of a buyer's rescission rights in a sale contract, the Associations are cognizant of the need to continue incurring actual damages in the form of remediation of common buildings in order to mitigate against the imminent harm posed by the presence of the Pro-Flex® CSST product at Adams Pointe and the overall effect of the presence of Pro-Flex® CSST within Adams Pointe buildings.

89.     In the interim, these Plaintiffs incurred expenditures in the form of the "recommended" retrofitting of the CSST system through bonding and grounding.

<u>The Bichlers</u>

90.     The Bichlers are individuals that hold the deed for their current residence. This residential property contains Pro-Flex® CSST, and as noted above, same is considered a defect material to the safety of the property, which involves a defect that is considered to require significant effort to repair.  These individuals have incurred actual damages in the form of third-party inspection costs to identify the scope of the danger as well as incur the monetary damages. associated with remediating the imminent harm.

91.     The residence owned by the Bichlers was duly inspected by local code

officials.  Upon receipt of the required final inspection report indicating compliance with the Construction Code Act and Uniform Construction Code, building code officials issued the requisite certificate of occupancy for each of their residences indicating installation in accordance with applicable standards and codes.

92.     These homeowners possess limited options to mitigate the impending harm posed by the dangerous yellow-jacketed CSST product, all of which force these individual consumers to shoulder the expenses of a product known to the Defendants to be inherently dangerous while being used for its designated purpose. These options are costly to individual property owners since same require either conversion of their homes to remove all gas delivery systems; retain gas delivery systems but remove all Pro-Flex® CSST from the structures, and instead install gas delivery systems that do not possess the insulative yellow jacket; or incur costs to install modified gas breaker valves to trigger the shut-off of natural gas to the CSST piping system in the event of electrical insult.

## FRAUDULENT CONCEALMENT - DISCOVERY RULE - AFFIRMATIVE REPRESENTATIONS

93.     The Pro-Flex® CSST Entities had a duty to disclose to Plaintiffs the internal industry knowledge of the defect of Pro-Flex® CSST, and the inaccuracies of supposed validation of any safety fix in bonding and grounding. The Pro-Flex® CSST Entities further had a duty to warn consumers such as the Plaintiffs of the susceptibility of Pro-Flex® CSST to disintegration or degradation after electrical insult.  And yet, the Pro-Flex® CSST Entities remained silent as to a product that is inherently dangerous such that it constitutes a material defect.

94.     The Pro-Flex® CSST Entities actively and fraudulently concealed that Pro-Flex® CSST is unreasonably dangerous, unfit for its ordinary and/or intended use, and/or is unsafe. Instead, to the contrary, the Pro-Flex® CSST Entities actively held the Pro-Flex® CSST out as safe for its intended use in residential and business structures.

95.     Furthermore, the ongoing violation of industry standards and practices regarding the distribution, sale, and training requirements for installation constitutes affirmative acts that should operate to prevent division of responsibility to any third-party for failures inherent to the product itself.

96.     The Pro-Flex® CSST Entities fraudulent concealment and overt misrepresentations of the safety of Pro-Flex® CSST or the existence of a viable and effect "safety fix" tolls the running of any applicable statute of limitations. Plaintiffs could not have, with the exercise of real caution, prudence, or diligence, discovered the defect within the applicable statute of limitations, thus tolling same.

## MISCELLANEOUS

97.     Any conditions preceding the institution of this lawsuit have been performed, have occurred, and/or have been waived.

98.     By filing the lawsuit, Plaintiffs neither intend to, nor in fact do, waive or release any right, claim, action, cause of action, defense and/or election of remedy.

## CAUSES OF ACTION

99.     According to the Pro-Flex® CSST Entities, Pro-Flex® CSST is a superior piping system that can supply natural gas throughout a home or commercial building, and

suggests routing it through walls, floor or ceiling joists, or outside to a variety of appliances.  These ongoing representations not only ignore the underlying danger of the yellow-jacketed product regardless of installation or inspection, but further ignores the existence of industry-wide recognized safer alternative designs to the flexible tubing natural gas system.

100.    Although the industry was actively developing potentially safer alternative "black" CSST products for 2004 public release, The Pro-Flex® CSST Entities opted not to engage in any safety modification to the manufacturing specifications of the Pro-Flex® CSST product.  Instead, as other manufacturers left the "yellow jacket" market behind, these Pro-Flex® CSST Entities saw the shift to a safer alternative as an opportunity to increase their own sales.

101.    Both the National Association of State Fire Marshals (NASFM) and the lightning experts at the Lightning Protection Institute (LPI) acknowledge, and support, the safer black-jacked flexible tubing natural gas system based upon the higher electrical arcing qualities of such product.  Despite such positioning, the Pro-Flex® CSST Entities continue the manufacture and marketing of the unreasonably dangerous yellow-jacket product.

102.    The harm in continuing sales of an admittedly defective product is amplified as to the Pro-Flex® CSST product since same is marketed and sold to the do-it-yourself market and subject to what Defendants classify as "self-training" on the installation of a natural gas system.  The Pro-Flex® CSST Entities consider qualifications and training to be the responsibility of either the consumer or independent third-parties,

and the resultant violation of industry standards prevents property owners from understanding the full scope of the danger posed by the Pro-Flex® CSST product.

103.    Furthermore, to the extent that any attention is given to the danger of yellow-jacket CSST, the Pro-Flex® CSST Entities focused their efforts on future installations, leaving consumers with legacy installations of CSST in the dark regarding the dangers of the Pro-Flex® CSST product.  However, the determination of proper installation under regulatory codes is answered upon the approval of the relevant Authority Having Jurisdiction.[10]

104.    Plaintiffs hereby incorporate by reference the above allegations as if set forth herein verbatim within the articulated causes of action, and upon same assert the following causes of action and requests for relief:

## <u>COUNT I</u>
## <u>Breach of Implied Warranty of Merchantability</u>

105.    This cause is asserted on behalf of all of the Named Plaintiffs.

106.    The Pro-Flex® CSST Entities establish the component design and development pursuant to their manufacturing specifications, assume the role of manufacturer as to the final CSST product, hold themselves out to the public and certification bodies as the manufacturer of their product, and are accountable for the condition of their product when they place same into the market for sale.

107.    Pro-Flex® CSST was sold and then installed in Plaintiffs' premises and/or dwellings in the same material condition as when it left Defendants' control and such use

---

[10]    Resolution of the issue whether the AHJ is the true arbiter of proper installation and resolves which code and code year applies *based on the date of the installation*.

of the Pro-Flex® CSST product was foreseeable.

108.    The Uniform Commercial Code[11] §2-314 recognizes that "a warranty that the goods shall be merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind."

109.    Furthermore, where a seller has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose. *Id.* at § 2-315.

110.    Pennsylvania adopted the relevant portions of the Uniform Commercial Code and recognizes there is an "implied warranty of merchantability and an implied warranty that the goods are fit for a particular purpose."

111.    The Pro-Flex® CSST Entities market Pro-Flex® CSST for the specific purpose of installing same in structures as the natural gas distribution system. The Pro-Flex® CSST Entities further explicitly encourage the purchase of their yellow-jacketed Pro- Flex® CSST product for the purpose of carrying natural gas.  However, the inherent danger created by the yellow-jacket surrounding the Pro-Flex® CSST is such that the very system intended to safely transport natural gas is ultimately the greatest danger.

---

[11]    The Uniform Commercial Code has been adopted by every state with the exception of Louisiana. To the extent Louisiana differs from the UCC, if in any relevant part pertinent to this action, a Louisiana sub-class may be appropriate. Such allegations will be made in the context of the appropriate motion for class certification.

112.   The Plaintiffs are reasonable consumers, and no reasonable consumer willingly constructs, uses, or owns a structure that inherently contains an imminent risk of catastrophic loss, and yet due to the actions of the Pro-Flex® CSST Entities, the Plaintiffs are forced to either suffer devastating losses, endure the imminent danger, or incur independent costs to remediate against same.

113.   Indeed, no reasonable consumer would knowingly purchase a product that is defective, dangerous, or improper for the purpose for which it is marketed and sold. Nor would any reasonable consumer agree to the installation of a product whose mere presence in a structure requires disclosure of same as a material defect for purposes of sale and valuation, or otherwise results in inspectors of legacy installations to specifically note the necessity for additional, expert inspection and repair.

114.   The Pro-Flex® CSST Entities have long been aware that household electric current emanating from inside a house can cause the same damage and destruction as a lightning strike in light of the composition of the yellow jacket surrounding Pro-Flex® CSST, and that such product is unfit for the ordinary purpose of gas distribution as intended in light of the inherent dangerous defect.

115.   Pro-Flex® CSST fails when directly insulted by lightning: upon electrical contact with the CSST, same operates to focus the electrical energy through the yellow-jacket and into the tubing itself, thus causing the electricity to perforate the natural gas pipe and permit gas to escape.

116.    The Pro-Flex® CSST Entities know that even after retrofitting previously approved CSST systems with new code-compliant and manufacturer-recommended bonding, which is required to be separately paid for by the consumer in an attempt to address the dangerous condition, Pro-Flex® CSST is not immune to electrical insult.

117.    Plaintiffs realized damages in the amounts paid for repair, replacement, remediation, property loss, inspection, and losses connected to the disclosure of the yellow-jacketed Pro-Flex® CSST gas piping systems by home inspectors and/or as a part of required sellers' disclosures of a material defect. These damages are direct and indirect result of the breach of implied warranties for which the Plaintiffs deserve recovery.

<u>**COUNT II**</u>
<u>**Strict Products Liability**</u>

118.    This cause is asserted on behalf of all of the Named Plaintiffs.

119.    At all times relevant to this cause of action, the Pro-Flex® CSST Entities jointly and collectively were manufacturers, designers, distributers, and/or individuals and/or entities which placed a defective product into the stream of commerce. The Pro-Flex® CSST product was supplied by these Defendants in a defective condition that rendered it unreasonably dangerous, and the defective condition was the proximate cause of pleaded injury, harm, and damages.

120.    As ordinary consumers, Plaintiffs did not expect the product to possess a condition that upon normal use was dangerous beyond their reasonable contemplation. Furthermore, these ordinary consumers did not, and could not, appreciate the probability and seriousness of the harm inherent to the yellow-jacketed product at issue.

121.    Section 402A of the Restatement (Second) of Torts provides that (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.  Under section 402A, the seller of a product that is in a defective condition unreasonably dangerous to the ultimate user or consumer will be liable to that user or consumer.

122.    The Pro-Flex® CSST Entities owed a duty to design, manufacture, market, sell, distribute, and/or place into the stream of commerce products that were not unreasonably dangerous to consumers. These Entities breached such duties by not only continuing the sale of yellow Pro-Flex® CSST without independently testing same as to the represented "fix" of bonding and grounding, but also despite knowledge of the insufficiency of broad warnings purportedly issued by a third party campaign.

123.    Although acknowledging the dangerous flaw of their product internally by the Pro-Flex® CSST Entities, owners of residences and business structures containing the yellow Pro-Flex® CSST as installed prior to the proposed "mitigation" of bonding and grounding were left to fend for themselves both as to warning and remedy.[12]

124.    The non-delegable duty articulated by the Restatement and adopted by the Commonwealth of Pennsylvania is imposed on persons or entities, such as the Pro-Flex®

---

[12]    In Pennsylvania, a plaintiff may prove that a product is in a defective condition under either the consumer expectation test or the risk-utility test.

CSST Entities, to make and/or market its product—which "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold"— free from "a defective condition unreasonably dangerous to the consumer or the consumer's property. Pro-Flex® CSST manufactured by the Pro-Flex® CSST Entities was expected to, and did, reach Plaintiffs' structures without substantial change in the condition in which it was designed, manufactured, tested, inspected, distributed, marketed or sold.

125.   Even more egregious in this matter is the admission that despite awareness of safer alternative designs that were financially competitive with the dangerous, yellow-jacketed product, the Pro-Flex® CSST Entities continued the manufacture and distribution of yellow Pro-Flex® CSST.

126.   The above-described acts and omissions resulted in harm to Plaintiffs who are experiencing realized damages in the form of property loss, structural damage, and expended inspection and repair costs. Plaintiffs have further incurred specific remediation costs as to those structures that have already undergone safety remediation and replacement to remove the dangerous Pro-Flex® CSST product.

<u>**COUNT III**</u>
<u>**Negligence - Marketing Defect/Failure to Warn**</u>

127.   This cause is asserted on behalf of all of the Named Plaintiffs.

128.   The Pro-Flex® CSST Entities failed to adequately notify the end user consumers, such as the Plaintiffs, of the unobvious danger inherent in Pro-Flex® CSST.

129.    The Pro-Flex® CSST Entities knew or reasonably should have known of the dangers that inherently existed in their Pro-Flex® CSST product. The Pro-Flex® CSST Entities had a duty to not only warn consumers of their product, but further independently test and validate the asserted safety of same. The Pro-Flex® CSST Entities breached this duty by failing to warn consumers both before and after the sale and/or installation of the products in question.

130.    The Pro-Flex® CSST Entities intentionally attempted to distract consumers from the dangers posed by legacy installation through the "safety campaign" that actually encouraged the continued use of the product, but with suggestion for the consumer to incur separate costs for additional inspections. Although the campaign was of little use in reaching ultimate structure owners regarding potential mitigation by third-parties who could attempt to make the Defendants' product safer, the Pro-Flex® CSST Entities participation in such campaign is telling – the Pro-Flex® CSST Entities have long been aware of the danger inherent in the yellow Pro-Flex® CSST product.

131.    The Pro-Flex® CSST Entities possessed a long-running awareness that energy buildup from electric energy generated by household current, indirect lightning strikes, or lighting strikes could disintegrate or melt the yellow jacketing, thus exposing the metal tubing underneath.  Once exposed, arcing between the metal tubing and nearby metal charged objects causes holes in the tubing, in turn leading to gas leaks, fires or explosions. And yet sales continued.

132.    The Pro-Flex® CSST Entities were negligent and breached their duty of care by negligently failing to give adequate warnings to purchasers and users of Pro-

Flex®, including Plaintiffs, about the unreasonably dangerous and defective condition of Pro-Flex®, the likelihood of CSST-induced fires, and the substantial and unreasonable risk of death or personal injury Pro-Flex® creates.

133.    Despite the fact that the Pro-Flex® CSST Entities knew or reasonably should have known that Pro-Flex® CSST was associated with and/or could cause natural-gas fed fires, thus creating a substantial and unreasonable risk of death or personal injury, they continued to market, manufacture, distribute and sell Pro-Flex® CSST to do-it-yourselfers and without confirmation of qualifications or training of installers are required by industry practices and standards. The result of such acts and omissions is that consumers such as the Plaintiffs now own structures that contain a serious risk of fire or explosion.

134.    The Pro-Flex® CSST Entities failed to exercise reasonable care in the design, marketing, and sales of Pro-Flex®, and further failed to inform Plaintiffs of the dangers inherent associated with using Pro-Flex® in their structures, and thus failed to adequately warn of its dangers. Such negligence and failure to warn caused actualized property loss and attendant damages

135.    The cost of removing or remediating Pro-Flex® CSST is prohibitive to many structure owners, and the act of shifting the costs safety measures is the very type of market failure and economic harm consumer protection laws was designed to prevent. Plaintiffs are left with few options in addition to absorbing realized property losses -- accept the danger Defendants acknowledge pose a safety risk necessitating further action

or undertake personal costly measures to remove the danger inherent to the yellow Pro-Flex® CSST product.

136.   As a direct and proximate result of the conduct alleged above, Plaintiffs have suffered ascertainable losses of money or property, real or personal, since same is unsafe as compared to safer alternatives, in incurring ineffective extraneous costs for inspection, bonding and grounding, and in removal and remediation costs.

<u>COUNT IV</u>
<u>Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law</u>

137.   This cause is asserted against on behalf of all of the Named Plaintiffs.

138.   Plaintiffs are "person[s]" as that term is defined by 73 P.S. § 201-2(2), Pennsylvania's Unfair Trade Practices and Consumer Protection Law. "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities. Plaintiffs purchased goods from the Pro-Flex® CSST Entities for personal, family, or household purposes in residential natural gas distribution.

139.   The Pro-Flex® CSST Entities conducted acts of unfair methods of competition, and acted unfairly and deceptively in the manufacture, marketing, sale, and distribution of the Pro-Flex® CSST product. The Pro-Flex® CSST Entities failed to disclose information available to them concerning the inherent dangers of Pro-Flex® CSST, and then actively engaged in a campaign advocating the supposed safety of the product through the "bonding and grounding" fix.  Furthermore, the Pro-Flex® CSST Entities continue to manufacture, market, and sell a product known to be defective when

used for its specific purpose, and engaged in unfair methods of competition and unfair or deceptive acts prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.

140.    The Pro-Flex® CSST Entities' conduct and omissions alleged herein occurred throughout the Commonwealth of Pennsylvania, and constitutes deceptive conduct that creates a likelihood of confusion or misunderstanding in connection with the usefulness, quality, safety and desirability of Pro-Flex® CSST.   The conduct and omissions alleged herein violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4), including but not limited to:

(i)     Passing off goods or services as those of another;

(ii)    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii)   Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

\*\*\*

(v)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

\*\*\*

(vii)   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

\*\*\*

(ix)    Advertising goods or services with intent not to sell them as advertised;

\*\*\*

(xxi)   Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

141.    These unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs.

142.    Plaintiffs seek to recover those damages authorized by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, § 201-9.2. These Plaintiffs have suffered harm in the form of actualized property damages, and monetary losses from the inspection, removal, and remediation of the CSST product. Therefore, they seek to recover actual damages; that the award be increased up to three times the actual damages sustained; and, for such additional relief as is necessary or proper, including but not limited to costs and attorney fees.

## COUNT V
## Injunctive Relief

143.    Plaintiffs seek injunctive relief to enjoin the CSST Defendants from further selling, marketing, distributing, and/or placing the Pro-Flex® CSST in the stream of commerce without making it safe for its ordinary and/or intended purposes by:

a)      Appropriately and properly insulating Pro-Flex® CSST;

b)      Warning all consumers, including direct notification of homeowners as well as distributers and/or installers, regarding the dangers of yellow-jacketed Pro-Flex® CSST, even if bonded and grounded, when exposed to electrical current so that consumers may make an informed decision regarding the risk-utility involved;

c)      Cessation of the sale of yellow Pro-Flex CSST through "big box" or standard retailers

d)      Enjoin the sale of yellow Pro-Flex CSST in a manner that delegates regulatory compliance with sale and training requirements to third-parties.

## RESERVATION OF CLASS ALLEGATIONS

144.   Plaintiffs originally brought suit individually and on behalf all other similarly situated persons, pursuant to Federal Rule of Civil Procedure 23.

145.   In Plaintiffs' First Amended Complaint, Plaintiffs included an anticipated class definition as any and all persons and/or entities who:

> *Own real property in the United States in which yellow-jacket Pro-Flex® CSST manufactured, designed, marketed, or distributed by the named Defendants was installed.*

[Doc.186].   Plaintiffs further suggested that additional sub-class definitions and classifications may ultimately be necessary based on state or regional locations. If the Court should determine not to certify a nationwide Class, then in the alternative, Plaintiffs noted an intention to seek certification of a Pennsylvania-only class. [Doc.186].

146.   Plaintiffs moved for class certification, which was denied. Plaintiffs thereafter were granted permission to appeal the interlocutory denial of class certification.

147.   The United States Court of Appeals for the Third Circuit issued a non-precedential opinion affirming the Order denying class certification on commonality and predominance grounds.

148.   The Third Circuit Court of Appeals held that the proposed national classes and/or subclasses would suffer from individualized causation and damages issues. The Opinion further noted that Plaintiffs did not carry their burden in the request for class certification on the available certification record that a Pennsylvania-only class could be determined based on common evidence.

149.   The Opinion and Judgment of the Court of Appeals on the certification interlocutory order denying class certification was not entered with prejudice.

150.   Plaintiffs hereby reserve the right to later seek class certification of a Pennsylvania-only class as to the above-enumerated Counts upon proper motion and with sufficient evidentiary support of such motion should ongoing discovery warrant same.  In accordance with Federal Rules of Civil Procedure 23.

## **RELIEF REQUESTED**

151.   Plaintiffs respectfully request that the Court grant the following relief and/or enter judgment against the Pro-Flex® CSST Entities, jointly and severally as follows:

a)   Find that the Pro-Flex® CSST Entities are jointly and severally liable for Plaintiffs' injuries and economic losses;

b)   Award appropriate monetary damages to Plaintiffs in an amount equal to losses from fire to real and personal property;

c)   Award appropriate monetary damages to Plaintiffs in an amount equal to the amount to remove the defective product and install safely designed gas pipes;

d)   Alternatively, or in further conjunction with the above damages, award an amount equal to expert inspection costs and installation of additional safety features, including but not limited to items such as gas breaker valves or bonding and grounding;

e)   Award such equitable relief as permitted by law, including an injunction against the sale of yellow Pro-Flex® CSST in Pennsylvania retail stores or direct to individual Pennsylvania homeowners without proof of compliance of regulatory requirements for certifying the CSST product;

f)   Order Defendants to engage in accurate, corrective educational advertising in the Commonwealth of Pennsylvania;

g)   Award pre-judgment interest to prevent the Pro-Flex® CSST Entities from receiving unjust enrichment from their improper conduct;

h)   Award reasonable and necessary attorneys' fees and costs; and

i)   Award such other and further relief in law or in or equity as the Court determines fair, reasonable, appropriate, and/or just deems just;


Respectfully submitted,

CARPENTER & SCHUMACHER, P.C.


*/s/Rebecca Bell-Stanton*
N. SCOTT CARPENTER (*pro hac vice*)
REBECCA BELL-STANTON (Pa. Bar No. 323555)
Parkway Centre IV
2500 N. Dallas Parkway, Suite 495
Plano, Texas 75093
Telephone: 972-403-1133
Facsimile: 972-403-0311
Email: scarpenter@cstriallaw.com
           rstanton@cstriallaw.com

*ATTORNEYS FOR PLAINTIFFS*